### GILLEY v. MISSOURI STATE LIFE INS. CO.  (No. 656—4163.)

(Commission of Appeals of Texas, Section A. June 27, 1925.)

1. **Insurance** ☞367(1)—**Paid-up and extended insurance provisions held inapplicable to policy having no reserve value.**

Where life insurance policy, after deducting from excess premiums 2½ per cent. of amount of policy, had no reserve value at date of default, and in reality had no reserve value during its entire period, *held*, that Rev. St. art. 4741, subds. 6, 7, and 9, relating to extended or paid-up insurance where policy has a reserve value, was inapplicable.

2. **Insurance** ☞367(1)—**Where policy had no value at time of default, provision relating to purchase of other insurance held inapplicable.**

Where policy in question at time of default had no value, beneficiary was not entitled to recover under Rev. St. art. 4741, subd. 9, pro-

viding that, in event of default, value of policy shall be applied to purchase of other insurance.

**3. Insurance ⪧665(3) — Correspondence between insurer and insured held not to show waiver of forfeiture, or acknowledgment of liability.**

Correspondence between insurer and insured, relating to reinstatem'ent of policy, which had lapsed for nonpayment of premiums, *held* not to show a waiver of forfeiture or acknowledgment of liability on part of insurer.

Certified Questions from Court of Civil Appeals of Second Supreme Judicial District.

Action by Maud H. Gilley against the Missouri State Life Insurance Company. Judgment for defendant, and plaintiff appeals. Questions certified from Court of Civil Appeals. Questions answered.

E. M. Overshiner, of Abilene, and Sayles & Sayles, of Eastland, for appellant.

Wagstaff, Harwell & Wagstaff, of Abilene, for appellee.

GERMAN, P. J. This case is before the court on certificate from the Court of Civil Appeals at Fort Worth.

On May 11, 1912, the Hartford Life Insurance Company issued to George W. Gilley a life insurance policy in the sum of $5,000; said policy being what is termed a 20-year pay policy, and the annual premium being $65.80. At the date of issuance, Gilley was 35 years of age. By indorsement and in the face of the policy it was denominated as a "twenty-year term, nonparticipating" policy. Gilley paid the annual premiums on this policy up to and including the premium due May 11, 1920, but did not pay the premium due May 11, 1921, and died September 24, 1921, without the policy being reinstated. This policy did not contain the provisions required by sections 6, 7, 8, and 9 of article 4741 of the Revised Statutes of 1911. It contained an express forfeiture clause as follows: "If any premium is not paid when due the company's liability hereunder shall cease." The policy · was assumed by the Missouri State Life Insurance Company, and its liability is exactly the same as the liability of the Hartford Life Insurance Company would have been if there had been no assumption.

This suit was brought by Mrs. Maud H. Gilley, who was named as beneficiary in the policy, to recover the sum of $5,000, with interest. Her contention is that this was such a policy as under the law should contain the provisions required by sections 6, 7, 8, and 9, of article 4741, and that by operation of law these provisions were read into the policy, and liability of the company would be the same as if they were actually a part of the contract.

By article 4741 it is provided that no policy of life insurance shall be issued or de-livered in this state unless it contains (as set out under section 7):

"A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than two and one-half per cent. of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provision shall stipulate that the policy may be surren-· dered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance, as aforesaid, and may stipulate that the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurances."

At the time of the issuance of this policy, the Hartford Life Insurance Company was using the American Experience Table of Mortality and the 3½ per cent. interest method, and on this basis the policy on the 11th day of May, 1921, had a reserve value of $86.45, subject to such deductions as were allowable under the law. Assuming that there were no deductions which could be made from this reserve value, it would have purchased on May 11, 1921, $38.74 paid-up insurance on the assured, and this amount applied as premium on the policy would have extended it 1 year and 241 days from May 11, 1921.

It is provided, by section 8 of article 4741, that the policy shall also include a table showing the loan values and the options available under the policy in case of default in payment of premiums. Section 9 requires:

"A provision that if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurances; and if such insurance shall be in force and the original policy shall not have been surrendered to the company and cancelled, the policy may be reinstated within three years from such default, upon evidence of insurability satisfactory to the company and payments of arrears of premiums with interest."

It is the contention of Mrs. Gilley, who will be referred to as plaintiff, that, by virtue of the requirements of section 7 of the law, the insurance company having failed to incorporate in the policy a table showing the options available to the insured, or to designate by the contract what particular benefit should accrue to the insured, in the event of default, the beneficiary was entitled to elect the option most beneficial, and therefor she chose to claim an extension of the

policy; and, the insured having died before the expiration of the period the policy was extended by reason of the reserve, she was entitled to recover the full amount of the insurance. She also contended that section 9, quoted above, requires that the reserve shall be applied to the purchase of extended insurance.

There was a further contention that the company had waived its right to claim a forfeiture, basing this claim upon certain acts which will be hereafter noticed.

Section 6 of the article referred to has reference to the loan value of the policy, and, as no contention is made that the loan privilege has anything to do with the right of plaintiff to recover, that section need not be further considered.

[1] The first question by the Court of Civil Appeals is intended to ascertain whether or not section 7 of the article of the statute has application to a policy, such as was issued in this case, which (without deductions being considered) had a reserve at the date of default, and which provided for insurance during a fixed term of years at a designated rate.

The defendant company asserts that, as the law itself provided that as to section 7 "this provision shall not be required in term insurances," it had no application to the policy issued to Gilley, which was, in contemplation of the law, and as understood by all actuaries, "term insurance." Whether or not insurance for a fixed term of years at a fixed rate is technically "term insurance," it is needless for us to say, as it is apparent, from a careful reading of section 7, that it has no application to the policy in question, and it is clear that it was intended that such a policy would fall in the class of "term insurances."

The provision of the law which requires that the policy shall secure to the owner a stipulate form of insurance, whether paid-up or extended insurance, designates that such insurance shall be of a net value equal to the reserve at the date of default, less a sum not more than 2½ per cent. of the amount insured by the policy. The law clearly recognizes the rule adopted by insurance companies, in arriving at the value of the reserve of policies, to first deduct from the excess in current premiums 2½ per cent. of the amount of the policy, in the nature of a carrying charge; and, if there be an amount left. it represents the real reserve, which may be used for the purpose of obtaining a loan, paid-up insurance, or extended insurance, as the insured may elect. In other words, regardless of the nature of the insurance, unless the rates are such, and the policy has run a sufficient length of time, that, at the date of default, the accumulated excess in premiums is sufficient that, after deducting therefrom an amount equal to 2½

per cent. of the amount of the policy, there is a balance left, then the policy in reality has no reserve value.

In this case all of the actuaries agree that in arriving at the sum of $86.45, which they designate as reserve, they made no allowance for the deduction of 2½ per cent. of the amount of the policy, and that, if this 2½ per cent. be deducted, as the law contemplates, and as it must have actually been done by the company, the policy in fact had no reserve value at all. And it is further shown that, under the rates designated by the policy, at no time in the 20-year period would it have had an actual reserve, taking into consideration the deduction allowable under the law. We understand that it is the universal rule among insurance companies in cases of term policies (that is, policies for a designated term of years), where the rate is as it was in this instance, to regard such policies as in reality having no reserve. We are also advised that it has been the uniform practice of the department of insurance in such cases, and with reference to such policies not to require the provisions of sections 6, 7, and 8 to be inserted in the policies. While such policies may not be technically "term insurances," yet they are regarded as in that class, because the law recognizes that they have in reality no reserve value, such as is necessary to secure to the insured paid-up or extended insurance. Of course there is nothing to prevent the parties contracting for the usual options in a policy for a term of years, and, when this is done, the policy would be expected to contain the necessary provisions as indicated in the law.

We answer the first question by saying that sections 6, 7, and 9 had no application to the policy of insurance involved in this suit.

[2] Plaintiff insists that the clause in section 9, which reads that, "in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurance," should be treated as an independent provision of the law and as if it stood alone. A casual reading of the entire section reveals that this contention is unfounded. We have copied this section as it appears in the original act, being chapter 108 of the General Laws of 1909, and it will be observed that this is merely a subjunctive clause, preceded by an "if" and comma, and also followed by a comma. It shows one of the conditions which must obtain before the policy may be reinstated. The thought is exactly the same as if the language read as follows: The policy may be reinstated within three years after default, if the value of the policy has been applied to the purchase of other insurance, and if such insurance be in force and the policy has not been surrendered. As this policy had no value to be applied to the purchase of other insurance,

and no controversy exists as to reinstatement, we answer the second question by saying that the beneficiary was not entitled to recover under section 9 of article 4741.

[3] On June 21, 1921, the insurance company wrote George W. Gilley a letter, calling attention to the fact that his policy of insurance had lapsed because he had not paid the premium. He was requested by the company to take up the matter of reinstatement. Blank application was inclosed, with request that it be filled out and returned with remittance to cover the unpaid premium with interest. On July 6, 1921, the company wrote Gilley another letter, stating that the policy had lapsed because of failure to pay the premium due May 11, 1921, and again requested that the application blank be filled out and sent in with remittance, and agreeing that, if necessary, the company would wait on him for a part of the amount due. Gilley replied to this letter, saying, among other things, that. he regretted that he had let his policy lapse. He also stated that if he could get the amount of insurance cut down to $2,500 or $3,000 he might consider the matter of reinstatement; but he also stated that he preferred insurance in some home company. On July 26, 1921, the company replied to this letter, stating that it would be satisfactory to reduce the insurance to $3,000. The letter also contained this statement:

"It would simply be necessary that you complete the inclosed release and request form and return it to us along with the policy itself and a remittance of $11.90. This cost would represent the annual premium of $39.48 on the new policy of $3,000, due May 11, 1921, after allowing you a credit for the cancellation of $2,000 of your present policy. Premiums under the new policy would be paid to May 11, 1922. However, before we could consider this change, it would be necessary that the present policy be reinstated."

Nothing further was done about reinstatement, and Gilley died September 24, 1921. We are unable to see anything in this correspondence which would amount to a waiver of forfeiture, or 'an acknowledgment of liability, and, as there was no reinstatement, we answer the third question by saying that under all the facts plaintiff was not entitled to recover any sum.

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.

PIERSON, J., not sitting.