MAUD H. GILLEY V. MISSOURI STATE LIFE INSURANCE COMPANY.

No. 4163.  Decided June 27, 1925; June 16, 1926.
(285 S. W., 807).

**1.—Life Insurance—Statute—Term Insurance.**

The expression, "term insurance," used in Art. 4741, Revised Statutes, 1911, Sec. 7, means insurance for a fixed term. A policy insuring against death "before the expiration of twenty years from the date hereof," and denominated "a twenty-year term non-participating" policy is such a term policy, and by the provisions of Sec. 7, of Art. 4741, is not entitled, on

default in premium payment, to the surrender value provided for therein, or its application to extend the life of the policy. (Pp. 52, 53).

### 2.—Same—Form of Policy—Duties of Insurance Commissioner.

It is the duty of the Commissioner of Insurance and Banking to see that all requirements of Art. 4741, Revised Statutes, were complied with in forms of life insurance filed with him by insurance companies proposing to issue them. His acquiescence in their use of the form here involved, without requiring the insertion of the clauses prescribed in Art. 4741, Subd. 6 and 7, shows the Department's recognition of that form as one for "term insurance" to which those requirements were not applicable. (Pp. 53-55).

### 3.—Same—Options.

The options provided for insured, on default in his payment of premiums, by Subds. 8 and 9, of Art. 4741, were to be exercised by application of the surrender value of the policy, and this determinable only by Subd. 7, which does not apply to "term insurance;" neither do Subds. 8 and 9 apply to it. (Pp. 55-58).

#### BY COMMISSION OF APPEALS.

### 4.—Insurance Policy—Reserve Value.

The policy of insurance here involved is held, by its terms, to have had no "reserve value" which could be applied, on the death of insured, while in default on a premium payment, to extend the term of his policy. (Pp. 49, 50).

### 5.—Insurance—Forfeiture—Waiver.

Correspondence between insurer and insured, with respect to reinstatement or reinsurance, here considered, is held not to show a waiver by the former of the forfeiture of the policy by default in payment of the premium. (Pp. 51, 52).

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Taylor County.

The Supreme Court, having referred the case to the Commission of Appeals, Section A, for its opinion thereon, and having approved same and directed that it be certified as the answer, on motion for rehearing re-examines the case and renders its own opinion, concurring with the judgment originally reached.

*E. M. Oversheiner* and *Sayles & Sayles,* for appellant.

A life insurance policy in which the insurer agrees to pay to the insured's beneficiary a certain sum on due proofs of death of the insured during the continuance of said policy and before the expiration of twenty years from the date of said policy, the consideration being an annual premium of $65.80 to be paid each year while the insurance is in force, is not a contract of "term" insurance within the meaning of Subds. 6 and 7, Art. 4741 of the Rev. Stats. of Texas. Mutual Reserve L. Ins. Co. v. Roth, 122 Fed., 856; Southland L. Ins. Co. v. Hopkins, 219 S. W., 264;

4 Words & Phrases, 2d Ed., 819; Fuller v. Metropolitan L. Ins. Co., 41 Atl., 15; Home Ins. Co. v. Continental Ins. Co., 73 N. E., 65; Fry v. Provident S. L. Ins. Co., 38 S. W., 127.

Where such a policy of life insurance as described in the first proposition contains no provisions with reference to paid up and extended insurance or loan values as required by Art. 4741, Subds. 6 and 7, Rev. Stats., said provisions will be read into and construed as a part of the policy. N. Y. Life Ins. Co. v. Orlopp, 61 S. W., 336; Southland L. Ins. Co. v. Hopkins, 219 S. W., 254; Ritchey v. Home Ins. Co. (Mo. App.), 78 S. W., 341; Union Cent. L. Ins. Co. v. Pollard (Va.), 26 S. E., 421, 36 L. R. A., 271, 64 Am. St. Rep., 715; Warren v. Postal L. Ins. Co., 148 N. Y. S., 1024; Archer Equitable L. Ass. Soc. (N. Y.), 112 N. E., 433; Prudential Ins. Co. v. Ragen (Ky.), 212 S. W., 123.

Should it be held that the insurance policy described in appellant's first proposition is "term insurance" within the meaning of Art. 4741, Subds. 6 and 7, Rev. Stats., and excepted from the provisions of said subdivisions; then Subds. 8 and 9 of Art. 4741 should be included in said policy as said subdivisions do not except term insurance from their operation. Remedial statutes should be construed liberally and beneficially so as to advance the remedy. O'Connor v. State, 71 S. W., 409; judgment reversed State v. O'Connor, 73 S. W., 1041, 96 Texas, 484, which is affirmed in O'Connor v. State of Texas, 202 U. S., 501, 50 L. Ed., 1120; Dobie v. Scott, 188 S. W., 286; Moore v. Comr. Court Bell County, 175 S. W., 849; Gulf, C. & S. F. Ry. Co. v. Blum Ind. School Dist., 143 S. W., 353. By Rev. Stats., 1911, Final Title, Sec. 3, statutes in derogation of the common law must be liberally construed with a view to effect their objects and promote justice. Sugg v. Smith, 205 S. W., 363. A proviso or exception in a statute relates to the paragraph or distinct portion of the enactment which immediately precedes it unless the contrary intention is clearly apparent. Sullivan v. Bailey, 83 N. W., 996, 125 Mich., 104; State v. Weber, 105 N. W., 86, 96 Minn., 348; State ex rel. Crow v. City of St. Louis, 73 S. W., 623, 173 Mo., 125, 61 L. R. A., 593; Leader Ptg. Co. v. Nichols, 50 Pac., 1001, 6 Okla., 302; Callaway v. Harding (Va.), 23 Grat., 542; Zacconti v. State, 150 S. W., 122, 105 Ark., 60; Joplin Supply Co. v. Smith, 167 S. W., 649, 182 Mo. App., 212.

Where the proof showed that the defendant had a reserve against the insurance policy in controversy of $86.45 and the policy having no provisions for deductions by the company of 2½ per cent of the face value of the policy as provided in Art. 4741, Subds. 6 and 7, Rev. Stats., the value of the policy was

equal to the reserve and the same being sufficient to extend the policy beyond the date of the death of the insured, the law will apply said value to extend said policy and thereby prevent a forfeiture. It seems clear that if the defendant had on hand a sufficient amount of funds at the time of the alleged default to extinguish the payment demanded, equity and good conscience would require its application thereon to save a forfeiture. The law will so apply it. Ibs v. Hartford L. Ins. Co., 119 Minn., 113, 137 N. W., 289; Price v. Brotherhood, etc., 116 Minn., 275, 133 N. W., 793.

The premium which the insured failed to pay was due May 11, 1921. Insured died September 24, 1921, one hundred and thirty-three days after default. The defendant offered to allow the insured a credit equal to $27.58 in consideration of the cancellation of $2,000 of his policy for $5,000, and thereby recognized that it had at least that much value to which the insured was entitled. Actuary E. G. Brown testified that $28.51 would have extended the policy one hundred and ninety-eight days. This is not disputed. There is some discrepancy in the figures $28.51 and $27.58, but we take it as so small as to be immaterial. The court found that the reserve value of the policy was $86.45.

The evidence in regard to waiver is all in writing, is undisputed, and as to whether or not it constituted a waiver of forfeiture of the policy, provided the company had a right to forfeit it, becomes a matter of law. Potter County v. Boesen, 191 S. W., 787; Crowdus Drug Co. v. Nichols, 194 S. W., 484.

*Wagstaff, Harwell & Wagstaff,* for appellee.

A life insurance policy in which the insurer agrees to insure the life of the insured for a fixed term of years, after which period of time all liability under the policy shall cease, and same shall become null and void, is a contract of term insurance under the Texas statutes.

In construing the statutes of Texas as to what is a term policy under the law, the court will give the words of the statute their usual, ordinary and every-day meaning and not a technical construction.

The expert actuaries, including the State actuary employed by the Banking and Insurance Department, having testified that the policy contract in question was a term policy, and the court having so found, the finding of the court is conclusive upon the question as to whether or not the policy contract involved in this suit is a term policy or not. Harris Co. v. Hammond, 203

S. W., 445; Fielder v. Houston Oil Co., 208 S. W., 158; State v. H. & T. C. Ry. Co., 209 S. W., 820.

Under any theory of this case, and regardless of the holding of the court on all previous propositions, appellant is not entitled to recover from appellee for the reason that Art. 4741 of the statutes, Sec. 7, affirmatively states that the net value of the policy shall be fixed by taking the value of the reserve and any dividend additions thereto and deducting a sum of not more than 2½ per cent of the amount insured by the policy and any existing dividend additions thereto. The evidence shows that the policy involved in this suit was figured on the American Experience Tables of Mortality, with interest at 3½ per cent. The actuaries, E. G. Brown, C. P. Rockwell and C. O. Shepherd, all testified that under such table the reserve would be $86.45. Even if it be admitted that such amount of $86.45 was a reserve available to the deceased, the deduction of 2½ per cent of the face value of the policy, which was $5,000, said 2½ per cent being $125, would leave no reserve from which extended insurance could be purchased.

MR. PRESIDING JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This case is before the court on certificate from the Court of Civil Appeals at Fort Worth.

On May 11, 1912, the Hartford Life Insurance Company issued to George W. Gilley a life insurance policy in the sum of $5,000, said policy being what is termed a twenty-year pay policy, and the annual premium being $65.80. At the date of issuance Gilley was 35 years of age. By endorsement and in the face of the policy it was denominated as a "Twenty-Year Term, Non-Participating" policy. Gilley paid the annual premiums on this policy up to and including the premium due May 11, 1920, but did not pay the premium due May 11, 1921, and died September 24, 1921, without the policy being reinstated. This policy did not contain the provisions required by Secs. 6, 7, 8, and 9, of Art. 4741, of Rev. Stats. of 1911. It contained an express forfeiture clause as follows: "If any premium is not paid when due the company's liability hereunder shall cease." The policy was assumed by the Missouri State Life Insurance Company, and its liability is exactly the same as the liability of the Hartford Life Insurance Company would have been if there had been no assumption.

This suit was brought by Mrs. Maud H. Gilley, who was named as beneficiary in the policy, to recover the sum of $5,000, with

interest. Her contention is that this was such a policy as under the law should contain the provisions required by Secs. 6, 7, 8, and 9, of Art. 4741, and that by operation of law these provisions were read into the policy and liability of the company would be the same as if they were actually a part of the contract.

By Art. 4741 it is provided that no policy of life insurance shall be issued or delivered in this State unless it contains (as set out under Sec. 7):

"A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than 2½ per cent of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provision shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance, as aforesaid, and may stipulate that the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurances."

At the time of the issuance of this policy the Hartford Life Insurance Company was using the American Experience Table of Mortality and the 3½ per cent interest method, and on this basis the policy on the 11th day of May, 1921, had a reserve value of $86.45, subject to such deductions as were allowable under the law. Assuming that there were no deductions which could be made from this reserve value it would have purchased on May 11, 1921, $38.74 paid-up insurance on the assured, and this amount applied as premium on the policy would have extended it one year and two hundred and forty-one days from May 11, 1921.

It is provided by Sec. 8, of Art. 4741, that the policy shall also include a table showing the loan values and the options available under the policy in case of default in payment of premiums. Sec. 9, requires:

"A provision that if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurance, and if such insurance shall be in force and the original policy shall not have been surrendered to the company and can-

celed, the policy may be reinstated within three years from such default, upon evidence of insurability satisfactory to the company and payments of arrears of premiums with interest."

It is the contention of Mrs. Gilley, who will be referred to as plaintiff, that by virtue of the requirements of Sec. 7 of the law, the insurance company having failed to incorporate in the policy a table showing the options available to the insured, or to designate by the contract what particular benefit should accrue to the insured, in the event of default, the beneficiary was entitled to elect the option most beneficial, and therefore she chose to claim an extension of the policy; and the insured having died before the expiration of the period the policy was extended by reason of the reserve, she was entitled to recover the full amount of the insurance.

She also contended that Sec. 9, quoted above, requires that the reserve shall be applied to the purchase of extended insurance.

There was a further contention that the company had waived its right to claim a forfeiture, basing this claim upon certain acts which will be hereafter noticed.

Sec. 6 of the article referred to has reference to the loan value of the policy, and as no contention is made that the loan privilege has anything to do with the right of plaintiff to recover, that section need not be further considered.

The first question by the Court of Civil Appeals is intended to ascertain whether or not Sec. 7 of the article of the statute has application to a policy such as was issued in this case, which (without deductions being considered) had a reserve at the date of default, and which provided for insurance during a fixed term of years at a designated rate.

The defendant company asserts that as the law itself provided that as to Sec. 7 "this provision shall not be required in term insurance," it had no application to the policy issued to Gilley, which was, in contemplation of the law, and as understood by all actuaries, "term insurance."

Whether or not insurance for a fixed term of years at a fixed rate is technically "term insurance" it is needless for us to say, as it is apparent from a careful reading of Sec. 7 that it has no application to the policy in question, and it is clear that it was intended that such a policy would fall in the class of "term insurances."

The provision of the law which requires that the policy shall secure to the owner a stipulated form of insurance, whether paid-up or extended insurance, designates that such insurance shall be of a net value equal to the reserve at the date of default,

*less* a sum not more than 2½ per cent of the amount insured by the policy.    The law clearly recognizes the rule adopted by insurance companies, in arriving at the value of the reserve of policies, to first deduct from the excess in current premiums 2½ per cent of the amount of the policy in the nature of a carrying charge; and if there be an amount left it represents the real reserve, which may be used for the purpose of obtaining a loan, paid-up insurance, or extended insurance as the insured may elect.    In other words, regardless of the nature of the insurance, unless the rates are such, and the policy has run a sufficient length of time, that at the date of default, the accumulated excess in premiums is sufficient that, after deducting therefrom an amount equal to 2½ per cent of the amount of the policy, there is a balance left, then the policy in reality has no reserve value.

In this case all of the actuaries agree that in arriving at the sum of $86.45 which they designate as reserve they made no allowance for the deduction of 2½ per cent of the amount of the policy; and that if this 2½ per cent be deducted, as the law contemplates, and as it must have actually been done by the company, the policy in fact had no reserve value at all.    And it is further shown that under the rates designated by the policy at no time in the twenty-year period would it have had an actual reserve, taking into consideration the deduction allowable under the law.    We understand that it is the universal rule among insurance companies in cases of term policies (that is policies for a designated term of years), where the rate is as it was in this instance, to regard such policies as in reality having no reserve.    We are also advised that it has been the uniform practice of the Department of Insurance in such cases and with reference to such policies not to require the provisions of Secs. 6, 7, and 8 to be inserted in the policies.    While such policies may not be technically "term insurances," yet they are regarded as in that class, because the law recognizes that they have in reality no reserve value, such as is necessary to secure to the insured paid-up or extended insurance.    Of course there is nothing to prevent the parties contracting for the usual options in a policy for a term of years, and when this is done, the policy would be expected to contain the necessary provisions as indicated in the law.

We answer the first question by saying that Secs. 6, 7, and 9 had no application to the policy of insurance involved in this suit.

Plaintiff insists that the clause in Sec. 9 which reads that "in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurance," should be

treated as an independent provision of the law and as if it stood alone. A casual reading of the entire section reveals that this contention is unfounded. We have copied this section as it appears in the original Act, being Chap. 108 of the General Laws of 1909, and it will be observed that this is merely a subjunctive clause, preceded by an "if" and comma, and also followed by a comma. It shows one of the conditions which must obtain before the policy may be reinstated. The thought is exactly the same as if the language read as follows: The policy may be reinstated within three years after default, if the value of the policy has been applied to the purchase of other insurance, and if such insurance be in force and the policy has not been surrendered.

As this policy had no value to be applied to the purchase of other insurance, and no controversy exists as to reinstatement, we answer the second question by saying that the beneficiary was not entitled to recover under Sec. 9, of Art. 4741.

On June 21, 1921, the insurance company wrote George W. Gilley a letter, calling attention to the fact that his policy of insurance had lapsed because he had not paid the premium. He was requested by the company to take up the matter of reinstatement. Blank application was enclosed, with request that it be filled out and returned with remittance to cover the unpaid premium with interest. On July 6, 1921, the company wrote Gilley another letter, stating that the policy had lapsed because of failure to pay the premium due May 11, 1921, and again requested that the application blank be filled out and sent in with remittance, and agreeing that if necessary the company would wait on him for a part of the amount due. Gilley replied to this letter, saying, among other things, that he regretted that he had let his policy lapse. He also stated that if he could get the amount of insurance cut down to $2,500 or $3,000 he might consider the matter of reinstatement; but he also stated that he preferred insurance in some home company. On July 26, 1921, the company replied to this letter, stating that it would be satisfactory to reduce the insurance to $3,000. The letter also contained this statement:

"It would simply be necessary that you complete the enclosed release and request form and return it to us along with the policy itself and a remittance of $11.90. This cost would represent the annual premium of $39.48 on the new policy of $3,000, due May 11, 1921, after allowing you a credit for the cancellation of $2,000 of your present policy. Premiums under the new policy

would be paid to May 11, 1922. However, before we could consider this change, it would be necessary that the present policy be reinstated.

Nothing further was done about reinstatement, and Gilley died September 24, 1921. We are unable to see anything in this correspondence which would amount to a waiver of forfeiture, or an acknowledgment of liability, and as there was no reinstatement, we answer the third question by saying that under all the facts plaintiff was not entitled to recover any sum.

The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.

Associate Justice Pierson not sitting.

*C. M. Cureton,* Chief Justice.

### ON REHEARING.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

We referred the motion for rehearing filed in this cause by the plaintiff in error, Maud H. Gilley, to the Commission of Appeals as now constituted for consideration. The Commission, after re-examining the opinion written by Judge German while a member thereof, in connection with the motion and the record, have recommended to us that the motion be overruled. Out of deference to the earnest insistence of counsel, we have also re-examined the entire case, and reached the conclusion that the Commission of Appeals correctly answered the certified questions in its original opinion. We will state our reasons for this conclusion.

The insurance policy involved is one by which the insurance company agreed to pay to the insured's wife $5,000 upon his death, provided that death occurred at a time when the policy was still in force, "and before the expiration of twenty years from the date hereof." This plainly makes the policy a "term insurance policy," unless it contain provisions to the contrary. The policy does not contain any such further provisions. On the contrary, methods 1 and 2 set forth in the policy make provision for the conversion of the policy actually issued into whole life or endowment insurance. Thus by means of language of inclusion and exclusion it is made manifest that the policy is simply a life insurance policy insuring the life of Gilley for twenty years, without any provision that indicates that it was

the purpose to issue an endowment or whole life policy. In fact, the policy itself is described as a "twenty-year term non-participating" policy, and expressly declares: "The cost of this insurance does not depend upon the profits of the company, nor does the policy participate in such profits."

The expression contained in Revised Statutes (1911), Art. 4741, "term insurance" or "term insurances," given its usual and ordinary meaning, means insurance for a fixed time. The word "term" as used in various connections is uniformly given the meaning of a fixed or definite time, whether it relates to days or other fixed periods of time. See generally Words & Phrases, Vol. 8, pp. 6819 et seq.; Southland Life Ins. Co. v. Hopkins, 219 S. W., 254, 244 S. W., 989.

The importance of determining whether the policy involved is a term policy within the meaning and purview of certain provisions of Revised Statutes, Art. 4741, is apparent from the opinion of the Commission of Appeals heretofore filed in this case, and will be hereafter adverted to.

Aside from what has just been said in concluding that the policy involved is one of "term insurances," we direct attention to the fact that Revised Statutes, Art. 4759, provides that life insurance companies shall within five days after the issuance and placing on the market of any form of policy of life insurance file a copy of such policy with the Department of Insurance and Banking. The purpose of this provision is clearly shown by the general statutes prescribing the duty of the Commissioner of Insurance and Banking, which are contained in Chap. 7, Title 65, Vernon's Complete Texas Statutes, Edition of 1920. It is unnecessary to refer to or quote the various provisions involved, since Subd. 1 of Art. 4493 expressly declares that it shall be the duty of the Commissioner of Insuurance "to see that all laws respecting insurance and insurance companies are faithfully executed." Reading the two articles referred to together, it is obvious that it was the duty of the Comissioner of Insurance and Banking to see that the requirements of Art. 4741 were complied with in all policies of insurance placed upon the market by the company involved in this case, as well as other companies. The requirements of the article referred to necessary to be considered in the case before us are Subds. 6 to 9, inclusive, of that article.

Subd. 6 is one which prescribes a loan value for an insurance policy after it has been in force three years, and sets forth the method by which this value is to be ascertained. The subdivision

expressly says: "This provision shall not be required in term insurances." It is obvious, therefore, that in the case of a term insurance policy it was unnecessary to set forth therein the option accorded the policy holder by Subd. 6 of this article. If the policy was not a term insurance policy, nor a single premium policy, then under the first paragraph of the article the privilege declared in Subd. 6 was required to be inserted in the policy. The policy issued in this case contained no such loan value option.

Subd. 7 of Art. 4741 provides for a certain form of paid-up insurance and for a cash surrender value. This provision, however, does not apply to "term insurances." The policy before us contains no such provision. If the policy before us was not one of "term insurances," then obviously it was the duty of the Commissioner to require that form of policy to be withdrawn from the market, or to take some other action to enforce the law relative thereto. It is not contended that the form of policy before us was condemned by the Commissioner of Insurance, or that he took any action to prevent its use.

It is plain, therefore, that the Department of Insurance and Banking has by its acquiescence in the sale of the policy here involved concluded that the policy was one of "term insurances," and therefore not subject to Subds. 6 and 7 of Art. 4741.

The Department of Insurance is organized for the very purpose of enforcing the insurance laws. It has no reason for existence except to enforce the insurance laws. In doing this many duties are prescribed, but the basis of all of them is to see that the statutes of the State enacted for the protection of the people are complied with by insurance companies. It would be idle to say that under these statutes it is not the duty of the Insurance Commissioner to see that insurance companies issue only policies authorized and permitted by the law. We have no doubt that the departmental view of the type of policy here involved has heretofore been that it was a term insurance policy, for otherwise the issuance of such policy would not have been permitted by that department.

The view here expressed is consistent with the testimony of Mr. C. P. Rockwell, actuary for the State Department of Insurance and Banking, who testified in this case that "a term policy is one in which the company agrees to pay the beneficiary of the insured the face amount of the policy, provided the insured dies within the time specified in the policy."

*        *        *        *        *        *

"When I testified in this case some time recently there was shown me policy No. 316191, issued by the Hartford Life Insur-

ance Company, dated May 11, 1912, upon the life of George W. Gilley. Said policy is what is ordinarily termed by life insurance actuaries a term policy."

Other actuaries for insurance companies who testified in the case also testified that the policy involved was a term policy. We have no doubt, therefore, that the policy was one of "term insurances" such as are specifically exempted by the statute from Subds. 6 and 7 of Art. 4741.

It may be true that the policy involved in the case of Mutual Reserve Life Insurance Company v. Roth, 122 Fed., 853, was also a term insurance policy, but, regardless of that fact, we think it likewise true that the policy before us is a term policy within the meaning of our statutes.

Subds. 8 and 9 of Art. 4741 read as follows:

"8. A table showing in figures the loan values, and the options available under the policies each year, upon default in premium payments during the first twenty years of the policy or the period during which premiums are payable, beginning with the year in which such values and options become available."

"9. A provision that if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurances; and if such insurance shall be in force and the original policy shall not have been surrendered to the company and canceled, the policy may be reinstated within three years from such default, upon evidence of insurability satisfactory to the company and payments of arrears of premiums with interest."

It will be noted that neither of these subdivisions contains special language exempting term policies from their provisions. We think, however, that these subdivisions must be read and interpreted in connection with Subds. 6 and 7, which do not apply to term insurances.

It is to be noted that Subd. 8 requires that there shall be inserted in all policies to which it is applicable a table showing in figures the loan values and options available under the policy. To say the least of it, this subdivision necessarily embraces those options which the statute requires shall be inserted in the policy.

It is said by a leading writer on insurance that the principle of recovery on a *quantum valebat* has no application to policies of life insurance, and if the policy is forfeited under its terms, there can be no proportionate recovery thereunder. He states that the earlier forms of life policies usually provided for absolute forfeiture for non-payment of premiums and an absolute

termination of all liability on the part of the insurer.  Cooley's Briefs on Insurance, Vol. 3, pp. 2393, 2394.  The same writer, however, states that recent forms of contracts generally contain specific provisions defining the rights of the insured after default in the payment of premiums.  He states that these provisions usually fall into one or more of four well defined classes, and declare in effect "that after a forfeiture for non-payment of premiums (1) the policy may be reinstated on certain conditions; (2) the insured may, on surrender of the policy, receive a certain portion of the reserve as the 'cash surrender value'; (3) a certain portion of the net reserve will be applied as a single premium to extend the policy for a limited term; (4) the insurer will issue a paid-up policy for a reduced amount proportionate to the amount of premiums actually paid."  Cooley's Briefs on Insurance (Ed. 1905), Vol. 3, p. 2394.

The statute before us was enacted in 1909, and no doubt was intended to incorporate within its provisions those features at that time generally regarded as important for the protection of the rights of policyholders.  A detailed examination of Subds. 6, 7, and 9 of our statute discloses this purpose.  Subd. 6, as we have stated, prescribes a loan value for insurance policies, and its full discussion is unnecessary here.  Subd. 7, however, prescribes a cash surrender value for policies, with the method of determining that value.  This is of course one of the current clauses of policies in vogue at the time Mr. Cooley wrote.  Subd. 7 also declares that there shall be inserted in policies other than term policies "a provision which in the event of default in premium payments after premiums shall have been paid for three full years shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend addition thereto, specifying the mortuary table and rate of interest adopted for computing such reserves, less a sum not more than 2½ per cent of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy."

It is obvious from the provision quoted that one of the options there provided for was "a stipulated form of insurance," and evidently comes within the fourth type of right described by Mr. Cooley, to the effect that on default a policyholder might receive a paid-up policy for a reduced amount proportionate to the amount of premiums actually paid; or it is at least a variation of the type described by Mr. Cooley.

The first sentence in Subd. 9, quoted above, declares that in

the event of default in the premium payments, the value of the policy may be applied to the purchase of other insurances. The statute reads, "shall be applied," etc. But it is obviously an option, since Subd. 8 provides for options. We think it an option, but that the language is to be interpreted according to what it actually says, and policies should provide that upon default the policyholder may have the net value of the policy applied to the purchase of other insurance. The remaining portion of Subd. 9, which however is a part of one sentence, taken in connection with what has been previously referred to, provides for reinstatement of a defaulted policy where other insurance has been purchased with the value of the policy. It is thus seen that the four things provided for in Subds. 7 and 9 come within the general description of those things which policies sometimes contained at the time when Mr. Cooley wrote his book, and we have no doubt that they are properly classed as the options described in Subd. 8, which we have quoted. We think it clear, however, that Subd. 9 cannot be made effective unless there is provided some method by which the value of the policy to be used in the purchase of extended insurance is to be ascertained. The object of Art. 4741 was to require insurance companies to lay plainly before the policyholder the rights guaranteed him by the statute. The language of Subd. 8, quoted above, requires that a table showing these options shall appear in the face of the policy, and that the options shall be shown *"in figures."* It is therefore definitely determined that the value of the policy which might be used under Subd. 9 to purchase extended insurance must be shown in figures. Art. 4741 having undertaken to prescribe what the policy shall contain, it must be looked to in determining what value was referred to in Subd. 9 and what value must be shown in figures. Subd. 7 of Art. 4741 does not leave this in doubt. In determining the amount of the cash surrender value required, this subdivision declares: "Such provision shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available *for the purchase of insurance as aforesaid."* The sum available for the purchase of insurance is shown in the previous quotation from Subd. 7. It is plain, therefore, that the amount which might become the amount of "a stipulated form of insurance" is to be regarded as the same amount as that "available for the purchase of insurance." Subd. 9 provides that the value of the policy is to be applied to the purchase of other

insurances, and is, we think, referable wholly to the amount described and referred to in Subd. 7. It is true that a method of computing the net value of policies, etc., is set forth in Art. 4498, but this is obviously a solvency provision, and has no reference whatever to what the policy form must contain. Subds. 7 and 9 are contained in the same article of the statute, and relate plainly to the same subject-matter, and must be construed together. The same may be said as to Subd. 8. Since Subd. 7 does not apply to term policies, it follows that Subds. 8 and 9 have no application to such policies. The statute appears to be poorly written, and more or less confusing in its provisions, but having provided in Subd. 7 a method of ascertaining the sum available for a cash surrender value, and for "a stipulated form of insurance," and having designated this as an amount available for the purchase of insurance, we think it would be unreasonable to apply any other test of the value of the policy for the purchase of insurance under Subd. 9. The policy of the Legislature was to make the law definite, and the options plainly set forth in figures, and we do not think the statute ought to be construed as permitting the value of the policy to be determined by any other rule than that specifically laid down in the related subdivisions of the statute. This view is somewhat enforced by the fact that the method of determining the loan value of the policy, as set forth in Subd. 6, is precisely the same as that for determining the amount of stipulated insurance, the cash surrender value, and that available for the purchase of insurance as defined in Subd. 7. In other words, we think that Subds. 6, 7, 8, and 9 relate as a whole to the same subject—that is, the subject of options available to policyholders in policies that come within their provisions, and that none of these provisions apply to policies exempted directly and specially in Subds. 6 and 7—that is, "term insurances."

It follows from the above that since we have concluded that the policy here involved is a term insurance policy, Subds. 6, 7, 8, and 9 of Art. 4741 do not apply to the policy.

We have considered the other questions raised in the motion, and conclude that the original opinion of the Commission of Appeals makes the correct answer to the certified questions. The motion for rehearing is therefore overruled.

Associate Justice Pierson not sitting.