## MANHATTAN LIFE INS. CO. OF NEW YORK v. WILSON MOTOR CO., Inc.

### No. 1513.

Court of Civil Appeals of Texas. Waco.

Oct. 11, 1934.

Rehearing Denied Nov. 8, 1934.

Seay, Malone & Lipscomb and Tarlton Stafford, all of Dallas, for appellant.

Henderson & Hoyle, of Bryan, for appellee.

GALLAGHER, Chief Justice.

This suit was instituted by appellee, Wilson Motor Company, against appellant, the Manhattan Life Insurance Company of New York, to recover on a life insurance policy issued by appellant on the joint lives of David L. Wilson and Willard W. Chambers. Chambers-Wilson Motor Company, a partnership, and their successors were named as beneficiaries therein. Said partnership was subsequently incorporated and such corporation is the appellee herein. Said policy was for the sum of $2,250, which sum was payable on the death of either of the individuals composing such partnership. It was dated April 30, 1927, and premiums were payable thereon annually in advance. Five annual premiums were paid on said policy, but the sixth premium, due April 30, 1932, was never paid. The insured Chambers was killed in a traffic accident November 8, 1932. Prior to his death neither he nor said Wilson ever offered to surrender said policy for its cash value at the time of default or for any other form of insurance. The policy contained no provision giving the insured the right upon default in payment of premiums to extended term insurance. It did, however, provide in express terms for its surrender for its cash value at the time of default, or for paid-up insurance in the amount such value would purchase at that time. It further provided, in substance, that if the insured did not, within three months after default in the payment of premiums, elect which of said benefits they would claim, it would become automatically paid-up insurance. Neither of the insured having made the tendered election,

nor having, so far as shown, communicated with appellant concerning their default in the payment of the 1932 premium, appellant, on September 27, 1932, nearly five months after such default, wrote a letter addressed to the insured jointly, advising them that the policy so issued to them had lapsed for non-payment of premiums and was then being carried as paid-up insurance, and urged them to make application for reinstatement. No response to this letter was made by the insured, or either of them. Appellee, on January 16, 1933, submitted proofs of the death of the insured Chambers and demanded payment of the full face of the policy, together with any and all further sums payable thereunder. Appellee thereafter, on January 25, 1933, instituted this suit to recover the full amount due on said policy, with statutory penalties and a reasonable attorney's fee. Appellant answered, admitting liability on the policy sued on for the paid-up value thereof in the sum of $375.01, and paid the same into the registry of the court.

The case was submitted to the court and judgment rendered in favor of appellee against appellant for the sum of $2,758.01, being the full amount of the policy, together with accrued dividend thereon, statutory penalty, and attorney's fees.

## Opinion.

Appellant, by appropriate assignments and propositions, contends that under the provisions of the policy sued on and the evidence introduced in connection therewith, no liability on its part, other than for the sum of $375.01, which it admitted it owed as paid-up insurance and which it tendered and paid into the registry of the court, was shown. Appellee concedes that no liability on the part of appellant other than for the sum tendered and paid into court by it was shown by the terms of the policy. Appellee contends, however, that article 4732 of our Revised Statutes required appellant to include in its policy a provision permitting the insured, on default in payment of said premium, to apply the cash value of said policy at the time to the purchase of extended term insurance; that such provision, having been wrongfully omitted from the policy, should be by operation of law read into the same and held available to appellee as beneficiary therein. Appellant, in its brief, has arranged in parallel columns the requirements of said article of the statute so far as pertinent herein and the provisions contained in the policy sued on, which arrangement we here copy:

**Statutory Requirements**

"Art. 4732. Policies shall contain what.—No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows: * * *

"7. A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserve, less a sum not more than two and one-half per cent. of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provisions shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance, as aforesaid, and may stipulate that the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurances.

**Policy Provisions**

This policy provides under the heading "Non-Forfeiture Benefits":

"After this policy shall have been in force two full years, the insured within three months after default in payment of any premium may elect—

"(A) To surrender this Policy for its cash value upon proper release signed by the Insured. Such cash value shall be equal to the reserve on the face of the policy at date of default (omitting fractions of a dollar per thousand of insurance) and the reserve on any outstanding dividend additions computed according to the American Experience Mortality Table, select and ultimate method, and interest at three and one-half per cent. per annum, together with any dividends standing to the credit of the Policy, less a surrender charge in no case exceeding one per cent. (1%) of the face of the Policy and decreasing annually until the fourth year after which there shall be no surrender charge, and less any indebtedness to the Company on this Policy (this balance is hereinafter referred to as the net cash value); or

"(B) To surrender this Policy for non-participating paid-up life insurance payable at the same time and on the same conditions as this Policy. The amount of such paid up life insurance shall be such as the net cash value under (a) will purchase as a net single premium at the attained ages of the Insured, according to the American Experience Mortality Table, and interest at three and one-half per cent per annum.

"If the Insured shall not, within three months after date of default in the payment of any premium, elect one of the foregoing two options, as provided in (A) or (B), the Policy shall become automatically paid-up under Option (B)."

"8. A table showing in figures the loan values and the options available under the policies each year, upon default in premium payments during the first twenty years of the policy or the period during which premiums are payable, beginning with the year in which such values and options become available.

"The values in the table opposite are computed in accordance with the above provisions, assuming that premiums have been paid in full when due for the number of years stated, that there is no indebtedness to the Company, no outstanding paid-up additions, and no dividends standing to the credit of the Policy; the surrender charge if any has been deducted."

Table of Loan & Surrender Values

| After Policy has been in force | Cash or Loan Value | Paid-up Life Insurance |
|---|---|---|
| 2 | $ 34 | $ 68 |
| 3 | 92 | 178 |
| 4 | 146 | 274 |
| 5 | 198 | 362 |
| 6 | 241 | 434 |
| 7 | 282 | 504 |
| 8 | 331 | 572 |
| 9 | 376 | 641 |
| 10 | 423 | 709 |
| 11 | 470 | 774 |
| 12 | 518 | 837 |
| 13 | 567 | 902 |
| 14 | 616 | 963 |
| 15 | 666 | 1024 |
| 16 | 716 | 1082 |
| 17 | 767 | 1138 |
| 18 | 817 | 1195 |
| 19 | 868 | 1249 |
| 20 | 918 | 1300 |

Years

"Values for later years will be furnished on request."

"9. That if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurances; and if such insurance shall be in force and the original policy shall not have been surrendered to the company and canceled, the policy may be reinstated within three years from such default upon evidence of insurability satisfactory to the company and payments of arrears of premiums with interest."

"Upon evidence of insurability satisfactory to the company, this policy, if it has not been surrendered for its cash value, may be reinstated at any time, within five years after default in premium upon payment of arrears of premiums with interest at the rate of 6% per annum, together with the reinstatement or payment of any indebtedness and the payment of the loan interest thereon."

■ The policy form used in this case had prior to such use been submitted to and approved by the Department of Insurance of this state. It was the duty of the insurance commissioner under the law to see that the requirements of the article of the statutes under consideration were complied with in all policies placed upon the market by appellant as well as other insurance companies. Necessarily, his approval of the policy form used in this case involved an administrative ruling that the same met affirmatively every requirement of said article. Gilley v. Missouri State Life Ins. Co., 116 Tex. 43, 53, 54, 273 S. W. 825, 285 S. W. 807, 808, par. 2. Such approval of said policy form was given in 1924, and it was affirmatively shown that the same had not been withdrawn at the time of the trial of this case. We do not think that the article under consideration is ambiguous, but even were it held to be, public policy requires the solving of mere doubts concerning its proper construction in harmony with the construction placed thereon by the officers of the department charged with its enforcement. Moorman v. Terrell, 109 Tex. 173, 178, 202 S. W. 727; Koy v. Schneider, 110 Tex. 369, 402, 218 S. W. 479, 221 S. W. 880, and authorities there cited; Harris County v. Hammond (Tex. Civ. App.) 203 S. W. 445, 448, par. 1 (writ refused).

■ The purpose of the three subdivisions of said article above quoted is clearly to preserve to the insured in some practical way the reserve or cash value of his policy in event he should for any reason make default in the payment of the stipulated premiums. Clearly, all three of them should be construed together. Subdivision 7 requires that every policy must contain a cash surrender provision and also a provision for "a stipulated form of insurance," the net value of which shall be equal to the reserve at the time of the default. No particular form of substituted insurance is prescribed. Only one form is in terms required, but the tender of an election between plural forms is not prohibited. It is merely required that some stipulated form of such insurance be made available. The Standard Dictionary defines "stipulate" as follows: "To specify as being a term or the terms of an agreement; to mention specifically; particularize." We conclude therefore that the stipulated form of insurance required in said subdivision is one specifically designated by the terms of the policy, and that such designation is contractual in its nature. Subdivision 8 of said article merely requires a table showing in figures the options available under the terms of the policy. The language thereof is equally applicable whether one or plural forms of substituted insurance are tendered by the terms of the policy. Whether subdivision 9 of said article constitutes in itself an option to apply the value of the policy in default to some form of substituted insurance in which the payment of further premiums is not

contemplated, or merely provides for the reinstatement of the original policy which has been converted into some such form of insurance, we deem immaterial. Such subdivision must be construed in connection with subdivision 7 and harmonized with the terms thereof. Gilley v. Missouri State Life Ins. Co., 116 Tex. 43, 57, 58, 273 S. W. 825, 285 S. W. 807, 810. A comparison of the terms of said article and the provisions of the policy sued upon shows that nearly all of such provisions are more liberal than required. There is nothing to indicate any attempt on the part of appellant to evade any of the provisions of said article. We have examined excerpts from the statutes of other states on the issue under consideration, and so far as we have been able to ascertain, all such statutes name specifically the kind of nonpremium-paying insurance required to be tendered to the defaulting policyholder. Sometimes only one such form is designated and sometimes more than one. The statute, however, in each case prescribes the requirement in definite terms. We think, in this state, an insurer has met the requirements of the article under consideration when it stipulates for conversion of the policy in case of default into either of the customary forms of nonpremium-paying insurance. We think that the provisions of the policy stipulating that the insured might at their option accept paid-up insurance, or demand the cash surrender value of such policy, were binding on them, and that the same are now binding on appellee, the beneficiary therein. It necessarily follows that a provision stipulating that the insured might at their option demand extended term insurance in lieu of the paid-up insurance stipulated in the policy cannot be read into the same by operation of law.

We have not reached the conclusion above announced without careful consideration of appellee's contention that the opinion of the Supreme Court in the case of Gilley v. Missouri State Life Insurance Company, supra, requires a contrary holding. In that case the policy upon the life of the deceased contained none of the provisions required by subdivisions 7, 8, and 9 of the article aforesaid. The insured defaulted in the payment of an annual premium, and about four months after such default died. Since said policy made no provision for substituted insurance upon default in the payment of premiums, the beneficiary elected to claim extended insurance and sued for the face of the policy. The decision of the case was based on the holding that the policy sued on was one for term insurance and had no reserve value to be applied to the purchase of substituted insurance, and was, by the express provisions of subdivision 7, excepted from the operation of all three of said subdivisions. The court, in discussing the construction of said subdivisions, said: "Subdivisions 7 and 9 are contained in the same article of the statute, and relate plainly to the same subject-matter, and must be construed together. The same may be said as to subdivision 8. Since subdivision 7 does not apply to term policies, it follows that subdivisions 8 and 9 have no application to such policies." We think the proper application of the excerpt quoted requires that the option, if any, to purchase other insurance accorded by the provisions of subdivision 9 must be exercised, if at all, in the purchase of such form or forms of insurance as may be expressly stipulated in the policy, as required by subdivision 7. Since the policy under consideration by the court in that case made no provision for any form of substituted insurance, if the requirements of the statute were read into the policy, the insured would be necessarily entitled to select the particular form of such insurance demanded. The beneficiary in the policy sued on in that case, claiming to have succeeded to the rights of the insured, elected to claim the benefit of extended term insurance. The use of the term "extended insurance" in the opinion in that case must be read in the light of this situation. We are unable to agree with appellee in its construction of the opinion of the court in that case.

The judgment of the trial court is reformed by reducing appellee's recovery to the sum of $375.01, and as so reformed, is affirmed.