[Civil No. 2562.  Filed December 6, 1926.]

[251 Pac. 458.]

C. RODNEY MacDONALD, Appellant, v. T. A. CALKINS, Appellee.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellant.

Mr. Maurice Blumenthal, for Appellee.

LOCKWOOD, J.—T. A. Calkins, hereinafter called plaintiff, brought suit against C. Rodney MacDonald, hereinafter called defendant, for the balance due on

a promissory note, in the amount of $520.25. The case was tried before a jury, and a verdict was rendered in favor of plaintiff in accordance with the prayer of his complaint. After the usual motion for a new trial was made and overruled, defendant appealed to this court.

There are some four assignments of error, raising in effect two legal propositions which we will discuss in their order, and to do so intelligently it will be necessary first to make a brief statement of the facts in the case. Plaintiff was an agent representing the Occidental Life Insurance Company, a corporation. Some time in the summer of 1925 he endeavored to sell defendant, who was a farmer residing a few miles southwest of Phoenix, an insurance policy. The latter had never before taken out any life insurance and at first was not interested in the proposition, but he was heavily indebted at that time, and when plaintiff explained the value of protecting the indebtedness by life insurance, the argument was listened to by defendant with some interest. Finally and on the 23d of July, 1925, he signed an application for a fifty thousand dollar life insurance policy. It was the understanding of both parties that the policy would only be carried for a short time, until defendant was able to reduce his indebtedness, and then it would be allowed to lapse. Defendant's nearest birthday was September 25th, at which time he would become fifty-four years of age; but the application expressly stated that the policy was to be issued as of the age of fifty-three, which under all life insurance principles would necessarily have made it bear the date of not later than March 24th, 1925. At the time the application was signed by defendant, he gave plaintiff his promissory note for the sum of $1,040.50, which was the regular premium on a policy of that nature as of the age of fifty-three years. This note

was payable one-half the 31st of October, 1925, and one-half January 1st, 1925, but bore no interest.

Shortly after the execution of the application and the note, defendant took and passed his medical examination, and the policy was mailed to him about August 18th, 1925, together with the usual blank slip for him to sign, acknowledging receipt of the policy. As soon as defendant received the policy, he noticed that it was dated back to March 24th. He testified he attempted to find the plaintiff several times, but did not meet him until about October 1st, and that he then inquired about the dating back of the policy, whereupon plaintiff explained that he had dated it back to save defendant some money, and that it could be changed at the latter's option at any time. Defendant admitted plaintiff made no promise either express or implied that he would have the change made, and plaintiff in his evidence denied even discussing any change in the date during the conversation referred to. On October 31st, the first installment coming due on the note, defendant paid it to plaintiff. Nothing further was done in regard to the matter by any of the parties until shortly after the 1st of January, 1926, when, defendant not having paid the second installment on the note at the time it was due, the matter was called to his attention both by plaintiff and the home office of the company, and a request made for payment, whereupon defendant on January 26th wrote the following letter:

"Jan. 26, 1926.

"The Occidental Life Insurance Co., Los Angeles, Calif., Mr. Robert J. Giles, Secretary and General Manager:

"Dear Sir: I am in receipt of a letter from your agency secretary, Mr. W. C. Wood, which I here inclose; I am sorry to advise you that I also have been somewhat dissatisfied in the transaction. When I received my policy I discovered it had been dated

many months before my application was made or accepted; during which time I certainly could not have received protection or benefit, and since receiving your recent letter and learning that there is dissatisfaction on the part of company officials, I have decided to remedy the fault by returning to you the policy No. 823647 and ask that the same be canceled.

"Trusting this will be satisfactory, I remain

"Yours truly,

"C. RODNEY MacDONALD."

The company refused to agree to a cancellation and returned the policy to defendant, who immediately remailed it to the company, whereupon the latter notified defendant it had been placed in the hands of plaintiff, who would hold it for him.

The first point of law relied upon by defendant is that the acceptance of the note in question without interest was a discrimination contrary to the provisions of paragraph 3449, Revised Statutes of Arizona of 1913, Civil Code. This paragraph, so far as it is pertinent to this case, reads as follows:

"3449. No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurance of the same class and equal expectation of life in the amount or payment of premiums of rates charged for policies of life or endowment insurance or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract it makes; nor shall any such company or any agent thereof make any contract of insurance or agreement as to such contract, other than as plainly expressed in the policy issued thereon; nor shall any company or agent pay or allow, or offer to pay or allow as inducement, any rebate of premiums payable on the policy, or any special favors or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement not specified in the policy contract of insurance. . . . "

It is urged by defendant that the failure to exact interest was a discrimination. It is contended by plaintiff that it was not. We have held in the case of *Western Union Life Ins. Co.* v. *Musgrave,* 25 Ariz. 219, 215 Pac. 536, discussing an alleged agreement made by an insurance agent that the company would loan the insured a certain sum of money if he took out a policy:

"This special favor which the law forbids, the court is asked to give. The proposition is unsavory. A contract in violation of this and similar laws will not be enforced"—citing cases.

There are many states with statutes to the same effect as ours above quoted, and it has been held with practical uniformity that no action could be maintained upon a contract violating the law. Is, however, the taking of a note without interest as payment of a premium, within the statute? It is generally held that an insurance company may authorize its agents to accept notes rather than cash in payment of a premium of insurance, in the absence of a statute forbidding it. 32 C. J. 1201. In fact, paragraph 3460, Revised Statutes of Arizona of 1913, Civil Code, impliedly, although not directly, recognizes that this practice is valid. If this be true it would appear that since the note in question was for exactly the same amount of premium as would be charged any other applicant of the same age, there was no discrimination. Neither the statute nor any provision of the application or policy, so far as we are informed, requires that any interest shall be paid upon a premium note. While defendant does not so state in express words, the implication of his argument seems to be that since the present value of a note without interest, due some time after its date of execution, is presumably less than its face value, there is a discrimination between a cash payment and one made by a noninterest-bearing note.

Assuming that there is a difference in the present value of the two forms of payment, how could it be made certain that a note bearing any assigned rate of interest whatever would exactly equal in its present value in cash the amount of its face? It is a well-known fact that the discount rates of banks vary from time to time and are even different for different makers of notes, and the present value of notes presented for discount varies accordingly, even though they bear the same rate of interest and run for the same time, to say nothing of the standing of their makers. What rate of interest, then, must we assume a note should bear, so that its present value will always equal exactly its face? It is apparently argued by defendant that the note should carry the statutory rate of six per cent as on judgments, and similar obligations. If, however, we hold this to be the correct and, necessarily, the only permissible rate of interest, if the discount rate is more than six per cent, the present value of such a note is less than its face, while if the discount rate should for some reason drop below six per cent then its present value is greater and it is again a discrimination between a cash payment and one in the form of a note. The only method whereby a note could be made exactly equal in value to a cash premium would be by the agent and the maker going to some bank in advance and having a note made and actually discounted of such a form and for such amount and rate of interest as the bank at that particular time would pay the amount of the regular premium for, and turning the money over to the insurance company. But this would, of course, be in reality a cash premium, and would in practice abolish the use of insurance premium notes, and we do not believe either paragraph 3449 or 3460, *supra,* ever contemplated that such procedure should be followed. We are of the opinion that so long as it is permissible to accept premium

notes at all in payment of a policy, the mere fact that interest is not charged thereon is not a rebate, consideration, or inducement within the meaning of paragraph 3449, *supra,* so long as the transaction is in fact what it appears on its face, and not in reality a rebate on the premium.

So far as we have been advised, there are but two cases in the United States wherein the precise point in question, to wit, the failure to exact interest on a premium note being a violation of a statute of the same effect as ours, has been discussed. They are: *Northern Assur. Co.* v. *Meyer & Kraenzlein,* 194 Mich. 371, 160 N. W. 617, and *McDonald & Frazier* v. *Schervish,* 6 Ohio App. 88. In both of these cases premium notes without interest were given, and on statutes in effect like ours it was held that they were not privileges or inducements within the meaning of the statute. It is true that in the first case, as is pointed out by defendant, the period for which the note would not bear interest was but a few days, and in the second case the court stated that the weight of the evidence was that the delay in time of payment was not an inducement to take the policy. We are satisfied that the decisions were correct in their conclusions, and although the reasoning therein may not have been based on the principles we have followed, it is not contradictory thereof. The trial court did not err in overruling defendant's motion for an instructed verdict, or in denying his motion for judgment *non obstante* based on the nonexaction of interest.

The other assignments of error deal with the action of the court in giving one instruction and in refusing another. The one given is somewhat lengthy, and we do not think it necessary to quote it in full. We think, however, that it states the law of the case correctly so far as it goes, and could not have misled the jury. The meaning defendant reads into it

impresses us as being one which the ordinary man would never find therein. The instruction refused would be a correct exposition of the abstract law if there were evidence in the record tending to support such a theory of the case. We think, however, that defendant's letter above quoted is conclusive to the effect that at the time he received his policy, he knew it had been dated back, and was in effect from March 24th, 1925, and his answers to the trial court's questions as to what occurred during his conversation with plaintiff on October 1st show clearly he had no legal right to rely on plaintiff to correct the alleged discrepancy. The evidence is undisputed the company offered to change the date of the policy if defendant so wished, as soon as he informed it he was dissatisfied. Defendant's own statements, oral and written, showing that there was no testimony supporting part of the requested instruction, and the court not being required to separate the objectionable part from that which would apply to the evidence, correctly refused to give it as asked. 38 Cyc. 1707, 1708.

There being no reversible error in the record, the judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.