COMMERCIAL STANDARD INS. CO. v.
BOARD OF INSURANCE COM'RS OF
TEXAS. ·
No. 7522.

Court of Civil Appeals of Texas. Austin.
Dec. 10, 1930.

Rehearing Denied Jan. 7, 1931.

R. W. Mayo, Crane & Crane, M. M. Crane, and D. A. Frank, all of Dallas, for appellant.

Robert Lee Bobbitt, Atty. Gen., W. Dewey Lawrence, Asst. Atty. Gen., and King, Wood & Morrow, and Wright Morrow, all of Houston, for appellee.

BAUGH, J.

This appeal presents but one controlling issue: The validity of an order of the board of insurance commissioners of Texas, fixing the amount of commissions which fire insurance companies doing business in Texas may pay to their local agents. On April 29, 1929, the board issued such order, effective May 1, 1929, the portion of which here attacked reads as follows:

"1. Stock fire insurance companies shall, effective as above stated, pay local agents commissions of 20% of the normal premium rate that would result from the application of the schedule to any risk before the addition or subtraction of any amount for good or bad fire record credit or penalty, in those cases where such penalty or credit is applicable, and if no such credit or penalty is applicable, then upon the final rate, except on the following classes: (a) On cotton covered under transportation floater policies; (b) On property covered under the 'Petroleum properties' schedule; (c) On policies countersigned by local agents at the request of a company on business produced by non-resident brokers; on all of which rates of commission may be arranged by agreement, not to exceed in any case 20%.

"2. Each fire insurance company shall differentiate between a local agent and a solicitor in commissions paid by such company to such local agent or solicitor so that the commission paid a solicitor by a company shall be generally 10% less than paid by the company to the local agent. Local agents shall pay at least 10% less to solicitors than their own commissions upon business, when solicitors are employed by local agents on commission.

"3. Each company will be required to confine local agency commission cost on automobile insurance business, including all lines

written by stock fire insurance companies, to maximum of 25%."

"6. Violations of any of the provisions hereof will be handled as prescribed in the statutes with reference to violation of Chapter 10, Title 78, Revised Statutes of 1925 (the Texas fire rating law), and other insurance laws of this State."

Appellant sought to enjoin the enforcement of this order on the grounds:

1. That it was neither expressly nor impliedly authorized by the Texas statutes.

2. That it was unreasonable and void because in violation of the federal Constitution guaranteeing freedom of contract between appellant and its employees.

3. That such order was on the same grounds, contrary to like provisions of the state Constitution.

■ We have reached the conclusion that appellant's first ground is well taken and will not undertake to discuss the others. The constitutionality of our Texas statutes regulating fire insurance rates in this state is not involved. It is now well settled that when a business, otherwise private in nature, becomes affected with a public interest it may be regulated by the state under its police power, so long as such regulation is reasonable and in the interests of the public; and that the fire insurance business falls within that class. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; Wilson v. New, 243 U. S. 347, 37 S. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024. And the insurance agent, who represents both the insurer and the insured in the consummation of such business, is essentially affected with the same interest, and therefore subject to the same regulation as it is. La Tourette v. McMaster, 248 U. S. 465, 39 S. Ct. 160, 63 L. Ed. 362. In the foregoing cases, the constitutionality of legislative acts was called in question. The parties to this appeal have ably and exhaustively briefed that question. Since, however, we have concluded that said order was not authorized by the laws of this state, we refrain from any discussion of the constitutional issues raised.

■ The powers of the board of insurance commissioners are prescribed, and their duties chiefly defined in chapters 1 and 10 of title 78, R. S. 1925, particularly with reference to fire insurance in chapter 10. Articles 4878, 4879, 4881, 4882, 4884, and 4887 define and direct in considerable detail such powers and duties of the board, vesting in them the exclusive power, authority, and duty to prescribe, fix, determine, and promulgate maximum rates of premiums. To set out these articles here would unduly lengthen this opinion. Suffice it to say that the statutes vest in said board very extensive and exclusive powers over premium rates, and provide for securing information on which to fix, alter, amend, or modify same. In all instances, however, such powers relate to fixing maximum premium rates; and nowhere is any express authority given by law to regulate or control any of the items, elements, or charges, entering into or going to make up the aggregate premium rate. The record discloses that of the premium dollar paid by the public for such insurance, approximately 55 per cent. goes to the insured to pay actual fire losses; and that the other 45 per cent. is absorbed in expenses of operation, creation of a reserve, etc. Of course, the actual fire loss itself cannot be definitely controlled nor fixed, and necessarily varies from year to year. All other elements going to make up the premium, however, are subject to definite regulation and control. And since the largest single element of the expense of operation is the commission paid to the local agent, the board contends that, unless it can fix, control, and regulate that item, it is powerless to fix premium rates; and that power to control such major expense item is necessarily implied from the power given to fix the maximum premium itself.

■ The fact that nowhere is such power expressly given, that the board is restricted to fixing a maximum rate only, and that insurance companies are authorized by law to write such insurance at a less premium than that fixed by the board, manifests a clear legislative intent, we think, to maintain, as far as practicable, competition between fire insurance companies doing business in this state. And these statutes, having undertaken in considerable detail to prescribe the powers and duties of the board relative to such maximum rate only, without giving authority to them to fix or regulate the different elements of expense entering into that rate, must be construed as a legislative denial of such power. 25 R. C. L. 981; 36 Cyc. 1122. We can see no more reason in principle for permitting the board to definitely fix and regulate one operating expense item of a fire insurance company than to permit the fixing of another or of all of said expense items. And if the board be permitted under its regulatory power to fix all of such expense items, or the major portion of same, it could and would usurp the control and management of such corporation itself, a function vested by law in its board of directors. Power to regulate by the state does not give the board a power of management, nor empower it to substitute its judgment for that of the directors of the corporation concerned. Southwestern Bell Tel. Co. v. Public Ser. Comm. of Missouri, 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 985, 31 A. L. R. 807; Banton v. Belt Line Ry. Corp., 268 U. S. 413, 45 S. Ct. 534, 69 L. Ed. 1020; Chicago, M. & St. P. Ry. Co. v. Wisconsin, 238 U. S. 491, 35 S. Ct. 869, 59 L. Ed. 1423, L. R. A.

1916A, 1133; Great Northern Ry. Co. v. Minnesota ex rel. Railroad & Warehouse Commission, 238 U. S. 340, 35 S. Ct. 753, 59 L. Ed. 1337; 51 C. J. 10, 44.

We are not impressed with the contention of the board that, unless they can control agents' commissions, they must either accept those paid by fire insurance companies as reasonable, and increase the cost of insurance to the public by increasing the 'aggregate maximum premium as such commissions increase; or else permit some companies to become insolvent through payment by them of excessive local agents' commissions in order to secure business. The provisions of chapter 10, title 78, manifest a clear legislative intent that the board ascertain from the various sources made available to it what constitutes reasonable charges and expenses necessary to the efficient management of fire insurance companies under the law; and after making due allowance for fire losses, reasonable operating expenses, an adequate reserve and a fair profit, arrive at a reasonable maximum premium sufficient to cover all such items and which will be fair to and protect the public. That a fire insurance company may, through competition to secure business, so increase its expense of operation, whether by payment of excessive commissions to local agents or otherwise, as to jeopardize its solvency, is no reason for control by the board of the local agent's commission. Other means are provided by the statute whereby the board may protect the public against such danger. In any event, fire insurance companies could, should the board be allowed to fix the agent's commission, create the same danger of insolvency which the board urges as one of its reasons for issuance of said order, by reducing its premium rate below the maximum fixed by said board, as authorized by article 4879.

The writing of fire insurance, while clothed with a public interest, is not such a service as the public has a right to demand, as may be true of common carriers and public utilities. Nor can the public demand that any such company continue in business, further than to protect its outstanding contracts. It may cease when it pleases, and take such risks as it sees fit. There is no inhibition against such company seeking only preferred risks and declining the more hazardous ones. If by so doing it earns more profit at less operating expense, and can pay a higher local agent's commission to secure such business, the remedy should be, not by controlling the agent's commission so as to eliminate competition for that character of business, but by classification of risks, and by fixing of a reasonable premium rate thereon accordingly. If an insurer can, by efficient management, or by proper curtailment of one item of its overhead, or operating expense, enable such company, without jeopardizing its solvency or reserve, to add such saving to some other item of expense, and by so doing stimulate or expand its own business, it is clearly its legal right to do so.

We think the order attacked is clearly invalid for another reason. In the case of Potomac Fire Ins. Co. v. State (Tex. Civ. App.) 18 S.W.(2d) 929, writ of error refused, this court had before it an agreement by two fire insurance companies doing business in Texas, limiting the local agent's commission in Texas to a maximum of 20 per cent. and binding said companies not to employ an agent accepting from any company a commission of more than 20 per cent. We held that agreement illegal because in violation of the anti-trust laws of Texas (article 7426, R. S. 1925); and that, until a local agent's commission is fixed "by some authority of law, same remains an item of expense with reference to which insurance companies may legitimately compete. * * *" That agreement related only to a maximum commission allowable. The order here attacked fixed a specific charge of 20 per cent. as to the major portion of fire insurance business written in this state. So far as this item is concerned, such order, if enforced, would completely destroy competition with regard thereto between fire insurance companies where it had theretofore existed. Such order, authority for which the board claims only as implied from its statutory power and duty to fix maximum premium rates, if enforced, would vitiate the anti-trust laws of the state in that regard. The only manner in which that can be done is by an express act of the Legislature itself. The board can exercise only the authority conferred upon it by law "in clear and unmistakable terms, and will not be deemed to be given by implication, nor can it be extended by inference, but must be strictly construed." 51 C. J. 56; State v. Robison (Tex. Sup.) 30 S.W. (2d) 292, 297.

We conclude, therefore, that the order issued was not authorized by law; that it is of no force and effect; and that the board of insurance commissioners should be perpetually enjoined from enforcing same, and it is so ordered.

Reversed and rendered.