**BUTLER et al. v. AMERICAN NAT. INS. CO.**

No. 9912.

Court of Civil Appeals of Texas. Austin.

Nov. 15, 1950.

Rehearing Denied Dec. 13 and Dec. 20, 1950.

Price Daniel, Atty. Gen. of Texas, and Dean J. Capp and Clinton Foshee, Asst. Attys. Gen., for appellant.

Critz, Kuykendall, Bauknight & Stevenson and F. L. Kuykendall, all of Austin, Dibrell, Dibrell & Greer and Louis J. Dibrell, all of Galveston, for appellee.

ARCHER, Chief Justice.

The American National Insurance Company, appellee, is a legal reserve, capital stock life insurance company, licensed and doing business under the provisions of Chap. 3, Title 78, Vernon's Civil Statutes. As such it has, since its organization in 1905, been engaged in writing ordinary and industrial life insurance policies. This suit was brought by the American National Insurance Company to enjoin the Board of Insurance Commissioners of the State of Texas, appellants, from enforcing its official order promulgated by such Board addressed to the American National Insurance Company, directing that company to cease issuing certain funeral service policies of insurance, identified by such company as "Special Old Line Legal Reserve Funeral Service Policies," copies of which were attached to and made a part of the order. The particular type of funeral service policies had in fact been previously

approved by the Board of Insurance Commissioners, but the order complained of recites that thereafter "certain funeral service policy transactions" had been submitted to the Attorney General for an opinion as to the legality of the transactions by the American National Insurance Company and Mr. Ben Williams, doing business as the Insured Funeral Service of Austin, Texas. The questioned policies, the issuance of which was inhibited by the order complained of, were a part of the "funeral service policy transactions." The order further recited that advice had been received in an opinion from the Attorney General that such "transactions described in the facts submitted" were in conflict with Secs. 23 and 24 of Art. 5068—1, V.C.S. Therefore, the Board ordered the company to cease and desist issuing such funeral service policies of insurance. All of the instruments and exhibits constituting integral parts of the plan of operations of the American National Insurance Company and Ben Williams, doing business as the Insured Funeral Service, including the questioned policies which were of the type issued in the plan and at which the Board order was directed, and also upon which the Attorney General's opinion was predicated, were specifically made a part of the official order. Appellee secured a restraining order ex parte and without notice, enjoining and restraining the enforcement of the order described; thereafter, upon a hearing a temporary injunction was issued restraining and enjoining the Board of Insurance Commissioners from enforcing or attempting to enforce any part of the order heretofore described, pending a hearing on the merits of the case.

The appeal is based on seven points assigned as error by the trial court.

Point No. 1 is that the policies are part of an illegal plan of operations of the insurance company in contravention of Art. 5068—1, Secs. 23 and 24, V.A.C.S.

Points 2 and 3 are directed to the error of the court in granting the temporary injunction because the Board had authority to enter the order complained of and to revoke its approval theretofore made.

Point 4 is that the company had notice and hearing. But, since the appellee is not urging this by way of counterpoint, no further discussion will be made concerning this assignment.

Points 6 and 7 are directed to the failure of the order of injunction to set out the reasons for its issuance, or to describe in reasonable detail the act or acts sought to be enjoined.

The appellee makes four counterpoints.

The first is to appellant's points Nos. 1, 2 and 3, to the effect that there was no abuse of discretion committed by the trial court in granting the temporary injunction, thereby preserving the status quo of the controversy pending a trial on its merits, because the policy was valid on its face and that the Board could not withdraw its approval.

The second point is that, although appellee is not urging failure to give notice as a ground for relief, there were other sufficient grounds to justify the issuance of a temporary injunction, counter to appellants' point No. 4.

The third point, counter to appellants' No. 5, is that the company did not have an adequate remedy at law; and the fourth point that the order is in compliance with Rule 683, Rules of Civil Procedure, as counter to appellants' points Nos. 6 and 7.

The order complained of reads as follows:

"April 11, 1950.

"Subject Considered:

"Funeral service policy transactions of the American National Insurance Company.

"General remarks and action taken:

"It was shown to the Board that on October 31, 1949 this Board, acting through its Chairman, submitted to the Attorney General of Texas, the request for opinion as to whether certain funeral service policy transactions by American National Insurance Company, Galveston, Texas, and Mr. Ben Williams, doing business as Insured Funeral Service of Austin, Texas, or either of them, conflicted with Sections 23 and 24 of Article 5068—1, or Article 5053, Vernon's Texas Civil Statutes, as amended,

describing in the letter the nature of the transactions and attaching to it various exhibits in respect of them.

"It is further shown to the Board that the Attorney General of Texas advised the Chairman of this Board that the transactions described in the facts submitted conflict with Sections 23 and 24 of Article 5068—1, V C.S.

"The letter to the Attorney General of Texas dated October 31, 1949, and exhibits attached, as above referred to, are expressly made a part of this Order as though copied verbatim herein.

"It is, therefore, the Order of the Board, that American National Insurance Company, Galveston, Texas, shall as of this date cease and desist the issuance of such funeral service policies of insurance."

The policy under consideration reads in part as follows: "American National Insurance Company will pay at the direction of the Beneficiary the Face Amount of Insurance herein specified to the Insured Funeral Service of Austin, Texas, and Texas Funeral Directors & Embalmers Association of Dallas, Texas, if the Insured dies while the Policy is in force."

On April 9, 1949, the Insurance Company wrote the following letter:

"Galveston, Texas,
"April 9, 1949.

"Phillips & Luckey Co.,
"Rockdale, Texas.

"Gentlemen: For 43 years the American National Insurance Company has enjoyed a fine and friendly relation with The Funeral Directors of the State of Texas. During that time hundreds of thousands of dollars in American National Policy Benefits have gone to defray burial expenses.

"At this time we are pleased to announce a new insurance policy and a new association which we think will mean much to you.

"The new policy has been named 'American National Special Funeral Service Policy.' The sole purpose of the policy is to defray funeral expenses, and it will be presented to the people of Texas on that basis by a sales force in excess of one thousand salesmen. These salesmen will also represent Insured Funeral Service, which firm will issue a Funeral Service Contact.

"Details of this association and how it will operate to serve you will be found in a four-page announcement which appears in the April issue of the 'Morticians of the Southwest' magazine, over the signature of Insured Funeral Service. A copy of that announcement is attached. In addition it is our understanding that Insured Funeral Service is forwarding complete details of the plan to you by mail.

"We hope that the Insured Funeral Service plan will appeal to you, and that we will be privileged to work with you in the years ahead as we have in the past.

"Sincerely yours,
"W. L. Vogler,
"Executive Vice-President."

"Exhibit 15
"Stipulations.

1.

"Ben H. Williams, an individual doing business under the trade name of 'Insured Funeral Service' does not receive any compensation from any insureds to which American National policies No. 4 and No. 4-A are issued nor from any of the approved funeral directors.

"Ben H. Williams, an individual doing business as 'Insured Funeral Service' has a written contract with the American National Insurance Company under the terms of which he receives some character of remuneration for his services.

"There is in existence a written contract between American National Insurance Company and Texas Funeral Directors and Embalmers Association, a corporation, they being the only parties to such contract, under the terms of which the American National agrees with Texas Funeral Directors and Embalmers Association that it will not engage in the undertaking and burial business and agrees that if it should violate its undertaking not to engage in such business that it will pay damages in the sum of One Million ($1,000,000.00) Dollars.

### 2.

"Ben H. Williams, doing business as 'Insured Funeral Service' has a written contract with Texas Funeral Directors and Embalmers Association under the terms of which, among other things, Texas Funeral Directors and Embalmers Association agrees to endorse and approve by letter the funeral service contract which has been designated as Exhibit No. 5.

### 3.

"Ben H. Williams has a contract with the American National Insurance Company under the terms of which he is entitled to write ordinary policies of insurance, and pursuant to such appointment he holds a license from the Insurance Commission as a life insurance agent. Under the terms of Ben H. Williams' said ordinary agency contract with the American National, said Ben H. Williams has not written and is not writing and is not permitted to write policies of insurance designated as Exhibits 4 and 4A herein."

The "announcement" referred to in the letter from the Insurance Company begins:

"Announcing a new and helpful burial insurance plan for Texas Funeral Directors," and continues:

"Insured Funeral Service is pleased to announce a new and attractive arrangement with Texas' largest Life Insurance Company whereby proceeds of legal reserve life insurance policies will be used to pay for funerals in amounts of $200, $350, and $500. Funeral Service Contracts will be made available to the public through more than 1,000 salesmen working out of 98 branch offices in the state of Texas.

"Funerals will be made available through Approved Funeral Directors.

"Here is how the plan works

"Money to pay for the funeral.

"1. Insured Funeral Service will issue a Funeral Service Contract providing for a funeral of stated amount. Should other or additional equipment, supplies or services than provided for in the contract be desired, the Funeral Directors shall render a statement for all equipment, supplies and services furnished by him and shall allow as a credit against such charges the face amount of the contract.

"2. The American National Insurance Company will issue a legal reserve policy, the proceeds from which will be used to pay for the funeral.

"3. Salesmen representing the American National Insurance Company will also represent Insured Funeral Service.

"4. Contracts, although separate and issued by different companies, will carry identical numbers, and will be delivered to the contract owner in the same jacket.

"5. The salesmen will take an assignment of the policy in favor of Insured Funeral Service at the time the policy is sold.

"6. When the policy becomes a claim a specific Approved Funeral Director will be designated by the beneficiary to take care of the funeral.

"The Funeral Service.

"Insured Funeral Service will make contracts with reliable Funeral Directors to provide the funeral service specified in the Funeral Service Contract. These Funeral Directors will be designated as Approved Funeral Directors and will be bonded. Approved Funeral Directors will be privileged to use the approved Funeral Director's emblem on their stationery and business cards.

"A copy of this emblem printed on a heavy 12" x 12" cardboard will be provided so that it may be prominently displayed in the business office of an Approved Funeral Director.

"The Funeral Service Contract, as well as all newspaper advertising and sales promotion literature issued by Insured Funeral Service, will feature this emblem and contract owners will be instructed to do business with Funeral Directors who display the emblem.

"The Benefits Provided by This Service

"Insured Funeral Service Contracts accompanied by a legal reserve life insurance policy insures both the contract owner and the Funeral Director that the money to provide a suitable funeral service will always be available.

"No Conflict With Present Insurance Agreements

"In order to become an approved Funeral Director it will not be necessary for a Funeral Director to discontinue any insurance arrangement he has now. This includes the operation of his own company.

"As a matter of fact this arrangement can be used to supplement the proceeds of any policy he might have now on the life of any particular individual.

\*   \*   \*   \*   \*   \*

"Since our Field Representatives will be unable to contact all Funeral Directors before May 1, 1949, we are mailing to all Funeral Directors known to us in Texas (1) sample Funeral Service Contract, (2) sample American National policy, (3) application for bond, (4) copy of the contract which will be issued to all Approved Funeral Directors, and (5) a self-addressed business reply envelope."

The assignments contemplated in the plan read:

"Assigned to Insured Funeral Service
and Texas Funeral Directors
& Embalmers Assn.

———, 19—.

"The undersigned, applicant for insurance with the American National Insurance Company, in consideration of the agreement of Insured Funeral Service to issue to him, upon delivery of such insurance policy, its contract providing for the burial of the Insured, does hereby assign to Insured Funeral Service, and Texas Funeral Directors & Embalmers Association, as a death claim, the proceeds from said insurance policy and directs the American National Insurance Company of Galveston, Texas, to pay the proceeds under such policy as may be issued on such application to Insured Funeral Service, and Texas Funeral Directors & Embalmers Association, subject to the terms and conditions of such policy.

"It is understood that upon the issuance of such policy by American National Insurance Company, Insured Funeral Service will deliver to me, along with said policy, its contract providing for the burial of the Insured, which contract shall bear the same number and be for the same face amount as such policy of insurance."

Ben H. Williams of Austin, Texas, doing business as Insured Funeral Service, sought and entered into contracts with funeral directors, and such contracts contained, among other provisions, these provisions:

"Whereas, American National Insurance Company of Galveston, Texas, has issued to ——— of ———, Texas, hereinafter referred to as Insured, its policy of life insurance on the life of Insured, said policy being numbered ——, and

"Whereas, the principal purpose of Insured in purchasing said policy of life insurance was and is to provide in advance for a funeral for himself, and also to provide in advance a fund to pay therefor, and

"Whereas, the Insured not being able to know where death will occur desires that qualified assistance be provided to facilitate funeral arrangements and the making of proceeds of the insurance policy available at the required time and place, and desires that such proceeds be applied, as far as may be required, to his burial or funeral expense in accordance with his wishes; and

"Whereas, Insured has executed and delivered to Insured Funeral Service an assignment of the above mentioned insurance policy, for the purposes already and hereinafter named; \* \* \*".

In a letter from the Insurance Company to Phillips & Luckey Company, Rockdale, Texas, there is this statement:

"Question: Who is Mr. Ben Williams, who operates the Insured Funeral Service?

"Answer: Mr. Williams is a native of the State of Texas, a graduate of Baylor University, has a Masters Degree from the University of Pennsylvania where he specialized in insurance under Dr. S. S. Huebner, the dean of life insurance professors, and is a Charter Life Underwriter. Mr. Williams has been in the life insurance business since 1932 and has held important executive positions in Texas, New York and Chicago. He is well known to all the executives of the American National Insurance Company and we are delighted to be associated with an individual with his background and reputation in this project. It

will be obvious to all concerned that the American National Insurance Company could not and would not ally itself with an individual who was not thoroughly responsible and capable of exercising any contractual relationship he might have with the company."

The policy states that it is a Special Old Line Legal Reserve Funeral Service Policy, payable at the direction of the beneficiary to the Insured Funeral Service of Austin, etc. In the letter of April 9, 1949, it is stated that the "sole purpose of the policy is to defray funeral expenses, etc." The Insured Funeral Service in its announcement stated that it was pleased to present a new and attractive arrangement with Texas' Largest Life Insurance Company, whereby proceeds would be used to pay for funerals, and that salesmen would represent the Insurance Company and the service, and that contracts, although separate and issued by different companies would carry identical numbers and be delivered to the contract owner in the same jacket.

Ben H. Williams has a written contract with the Insurance Company, under the terms of which he receives some character of remuneration for his services.

We believe that the Funeral Service Policy in conjunction with the Insured Funeral Service are in conflict with Secs. 23 and 24 of Art. 5068—, and are illegal. The above sections are as follows:

"Sec. 23. Any individual, individuals, firms, co-partnerships, corporations or associations doing the business of providing burial or funeral benefits, which under any circumstances may be payable partly or wholly in merchandise or services, not in excess of One Hundred and Fifty ($150.00) Dollars, or the value thereof, are hereby declared to be burial companies, associations or societies, and shall organize under provisions of Chapter 274, Acts of the Forty-first Legislature, 1929, and amendments thereto; and shall operate under and be governed by Chapter 274, Acts of the Forty-first Legislature, 1929, and amendments thereto, and this Act. It shall be unlawful for any individual, individuals, firms, co-partnerships, corporations, or associations, other than those defined above, to engage in the business of providing burial or funeral benefits, which under any circumstances may be paid wholly or partly in merchandise or services.

"Sec. 24. Policies or certificates issued by burial associations shall provide for payment of the benefit in certain stipulated merchandise and burial service, which shall be scheduled in the policy or certificate and approved by the Board of Insurance Commissioners as being of the reasonable value as stated in the face of the policy, unless the insured shall at the time said policy is issued elect to have same paid in cash. The policy shall show in writing the election made. If the association issuing said policy shall fail or refuse to furnish the merchandise and services provided for in the policy, same shall be paid in cash."

Under Article 4679c, the Life Insurance Commissioner is chairman of the Board and has supervision of matters relating to life insurance, to the chartering of companies, certificates of authority, etc., and by Article 4682, Subdivision (1), the Board shall see that all laws respecting insurance and insurance companies are faithfully executed. By Subdivision (11) of the same article it is made the duty of the Board to suspend the entire business of any insurance company during any period of noncompliance with the laws relative to insurance. Guardian Life Insurance Company v. Reagan, Tex.Civ.App., 155 S.W.2d 950, affirmed, 140 Tex. 105, 166 S.W.2d 909.

Article 5068—1, Sec. 9, V.A.C.S., provides: " * * * All certificate forms hereafter used must be in accord with the provisions of this Act and with all other laws regulating such associations as are embraced in this Act."

The certificate forms refer to policy forms under that section. This doubtless means that the policy forms used by life insurance companies, which are among those companies included in the regulation of Article 5068—1, V.A.C.S., must be in accord with the laws of this state.

That the Board of Insurance Commissioners has the duty, authority and

obligation to see that all laws respecting insurance and insurance companies are faithfully executed are not questioned; such powers and duties are conferred by statute. Article 4679c; Article 4682, Subs. 1 and 11; Article 4690, V.A.C.S.; Guardian Life Ins. Co. v. Reagan, supra.

In Gilley v. Missouri State Life Insurance Co., 116 Tex. 43, 273 S.W. 825, 285 S.W. 807, 808, Justice Cureton, speaking for the court, stated: "The department of insurance is organized for the very purpose of enforcing the insurance laws. It has no reason for existence, except to enforce the insurance laws. In doing this many duties are prescribed, but the basis of all of them is to see that the statutes of the state enacted for the protection of the people are complied with by insurance companies. It would be idle to say that under those statutes it is not the duty of the insurance commissioner to see that insurance companies issue only policies authorized and permitted by the law. We have no doubt that the departmental view of the type of policy here involved has heretofore been that it was a term insurance policy, for otherwise the issuance of such policy would not have been permitted by that department."

We, therefore, conclude that the Board of Insurance Commissioners had authority to make and enter the order which had the effect of revoking the approval theretofore granted to the American National Insurance Company of the policies of the type attached to such order, and identified as Special Old Line Legal Reserve Funeral Service Policies.

The order of the Board is made prospective in its operation and was not intended to abrogate policies issued theretofore by the Insurance Company, which had given rise to contractual obligations with many policyholders.

The fact that the beneficiary designated by the original beneficiary, in many cases, had no insurable interest may pose a further reason for the Board to have given a more mature consideration to the policies and the funeral plans in connection therewith.

In accordance with our holding herein we reverse the judgment of the trial court, wherein he ordered the issuance of the temporary writ of injunction, and dissolve the writ so issued. Reversed and the temporary writ of injunction dissolved.

Reversed and temporary writ of injunction dissolved.

On Appellee's Motion for Rehearing.

Motion for rehearing questions our original opinion mainly on the ground that appellee, a domestic legal reserve life insurance company, organized under Chap. 3, Title 78, V.A.C.S., is exempt from all the provisions of Art. 5068—1, V.A.C.S., and particularly Secs. 23 and 24 thereof, defining and regulating burial associations.

This exemption is claimed under Sec. I of such Act, which reads:

"This Act shall apply to and embrace all insurance companies and associations, whether incorporated or not, which issue policies or certificates of insurance on the lives of persons, or provide health and accident benefits, upon the so-called mutual assessment plan, or whose funds are derived from the assessments upon its policyholders or members, and shall, in fact apply to all life, health and accident companies or associations which do not come within the provisions of Chapter 3, Chapter 5, Chapter 7, Chapter 8, Chapter 9, Chapter 18, Chapter 19, or Chapter 20, Title 78 of the Revised Civil Statutes of Texas, except that it shall not apply to associations not operated for profit composed only of the members of a particular religious denomination, and which do not provide insurance benefits in excess of One Thousand ($1,000.00) Dollars, on any one person and which do not pay any officer a salary in excess of One Hundred ($100.00) Dollars per month. This Act shall include local mutual aid associations; statewide life; or life, health and accident associations; mutual assessment life, health and accident associations; burial associations; and similar concerns by whatsoever name or class designated, whether specifically named or not.

"This Act does not enlarge the powers or rights of any of such associations nor

enlarge the scope of their legal or corporate existence; nor authorize the creation of any association or corporation to do any of the sorts of business above indicated, where such creation is not now specifically permitted by law. The laws prohibiting or limiting such creation and the exercise of corporate power are not affected by this Act."

 We do not agree with appellee that the exclusion provided in the above section of this Act can be converted into affirmative authority authorizing appellee and others of its kind to operate as a burial association without any statutory regulation. This law was enacted by the Legislature because of "The fact that the present laws governing life, health and accident assessment insurance, as well as burial benefits, do not adequately protect the members from loss through unwholesome, unsound or fraudulent practices, and the Board of Insurance Commissioners is not empowered to safe-guard the public interest * * *." Sec. 36, S.B. 35, Acts 46th Leg., Reg.Sess., p. 401.

The passage of this Act would have aggravated the situation described by the Legislature if appellee is correct in its interpretation of this law.

It is clear, in our opinion, that the overall purpose of this Act was, as expressed in the title of the Act, "Regulating Mutual Assessment Companies", and insofar as such regulation was concerned appellee and other similar companies were not regulated thereby, but insofar as *burial associations* are concerned, which were specially defined and regulated by severable portions of this Act that such Act and such laws therein referred to exclusively provide the requisites of and controls for those who desire to engage in the business of writing burial insurance payable wholly or partly in merchandise or services, and that appellee was not free to write insurance of this kind as it pleased.

In other words, we construe Section I of this Act as not in fact creating any exemption in favor of appellee or in vesting appellee with any more authority than it previously had, but we construe it only as ex-pressing the legislative intent that appellee and the other types of companies named did not come within the purview of the Act.

The motion is overruled.

Overruled.