**ALLSTATE INSURANCE COMPANY,
Appellant,**

v.

**STATE BOARD OF INSURANCE, Appellee.**

No. 11367.

Court of Civil Appeals of Texas.

Austin.

March 16, 1966.

Rehearing Denied April 6, 1966.

———◆———

Osorio & Palmer, E. Eugene Palmer, Austin, for appellant.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., Paul W. Phy, John W. Fainter, Jr., Asst. Attys. Gen., Austin, for appellee.

ARCHER, Justice.

This is a suit in which appellant Allstate Insurance Company challenged certain rules and regulations promulgated and adopted by the appellee State Board of Insurance which prohibited the charging of less than si:. per centum per annum simple interest on deferred insurance premium payments on all lines of insurance subject to the provisions of Chapter 5, Texas Insurance Code, 1951, as amended, V.A. T.S., written by insurance companies licensed to write insurance in Texas. For the sake of brevity, Allstate Insurance Company will be referred to as "Allstate" and the State Board of Insurance will be referred to as the "Board" hereinafter. Allstate contended that the Board is without authority to promulgate such rules and regulations and, therefore, the rules and regulations complained of herein are invalid.

The Board contends that it has clear statutory authority to promulgate the rules and regulations complained of herein, and that such rules and regulations are valid and reasonably supported by substantial evidence. Upon trial of this case below, the trial court ruled that the Board had authority to promulgate and adopt the rules and regulations complained of and denied Allstate the relief it sought in all respects.

The appeal is predicated on 13 points and are that the trial court erred in making conclusions of law Nos. 2 and 3 to the effect that the rules were valid, and in refusing a conclusion requested by plaintiff that the rules were invalid and beyond the scope of Chapter 5 of the Insurance Code and the authority granted therein, and refusing to grant appellant's request for an amended conclusion of law that enforcement of the rules has resulted in violation of Art. 7426, Vernon's Ann.Civ.St.; that a proper interpretation of Chapter 5 excludes methods of collecting premiums, in refusing to conclude that the extension of credit and charge of interest therefor do

not as a matter of law constitute an "inducement;" in admitting into evidence certain exhibits and all testimony relating to competitive cutting of rates of interest on deferred premium payments, in making conclusion of law No. 2 because same is contrary to the Insurance Code, in making fact finding No. 14 because there is no substantial evidence to support such finding, and no substantial evidence to support findings Nos. 1, 2, 4 and 16, and the court erred in refusing appellant's request for amended conclusions of law to the effect that the rules are discriminatory.

Appellee asserts that the holdings of the trial court are valid and authorized by the Insurance Code, and are supported by substantial evidence and not in violation of Article 7426, V.A.C.S., and are not discriminatory.

For a number of years it has been the practice of insurance companies to accept notes as evidence of indebtedness as payment for premiums in automobile, casualty and fire and other allied lines of insurance, which was approved by the State Board of Insurance and its predecessor.

The companies would accept premium notes and charged 6% interest until 1955 when the Attorney General ruled that the Board did not have authority to regulate the interest rate charged on deferred premiums on fire and allied lines of insurance. Thereafter companies charged different rates of interest on the unpaid balance on deferred premiums on all lines of casualty and fire insurance, of from 3% to 5% interest, until in 1959, when the practice became to charge 5%. Subsequently various insurance companies began making exceptions by reducing the rate of interest.

The rule involved particularly in this case is as follows:

"Text of Rules:

Unless otherwise specifically provided in this manual, no company or agent shall extend, guarantee or arrange for credit in any form at a rate of interest less than six percentum (6%) per annum simple interest applied to the unpaid balance of all premiums deferred to any agreed stipulated date or dates. The charging of any lesser rate of interest shall be considered an extension of credit as an inducement to insure with a particular company or agent and in violation of the provisions of the Texas Insurance Code, 1951, as amended, prohibiting rebates or unjust discrimination and is, therefore, prohibited. This rule, however, is not intended to affect the usual customary open accounts."

Article 7426, V.A.C.S., is concerned with Trusts—Conspiracies against Trade.

The Board is charged by Articles 1.02(b) and 1.10(1), Texas Insurance Code with enforcing the insurance statutes. Butler v. American National Insurance Company, Tex.Civ.App., 235 S.W.2d 185, er. ref.

▆ Administrative agencies may adopt and promulgate reasonable rules and regulations to and in the performance of specific statutory duties. Kee v. Baber et al., 157 Tex. 387, 303 S.W.2d 376.

Chapter 5 of the Insurance Code under which most companies writing automobile, casualty and fire and allied lines are subject which prohibits discrimination by insurers between insureds, prohibits rebates and the use of anything not in a policy, as an inducement to insure.

Articles 5.08 and 5.09, as amended, relate to automobile lines of insurance and make it unlawful for any insurer to contract with insured for any special favor, or any valuable consideration, or rebates not specified in the policy.

Article 5.20 is substantially as the prior Articles, with an added sentence: "Any violation of the terms of this article shall constitute unjust discrimination and shall constitute rebating * * *."

Article 5.41, which relates to fire and allied lines of insurance, provides that no

company can give or sell, or purchase, as an inducement to insure, any stocks or other securities, or anything of value, not specified in the policy, and that the doing of any of the acts prohibited shall be deemed guilty of unjust discrimination.

Beginning in 1959 or 1960 some insurance companies began to charge different rates of interest to different insureds, on deferred premiums in order to retain old business or obtain new business. To prevent such discrimination and inducement, the Board promulgated and adopted Orders 6261, 6332 and 6432, hereinabove referred to.

Allstate appealed to the Board for a reconsideration of these rules, and after a full hearing the appeal was denied, and Allstate filed this suit challenging the rules and the authority of the Board to make such rules.

There can be no question but that under the provisions of Chapter 5 of the Insurance Code it is intended that all insureds having similar hazards be treated equally.

The duty and authority has been delegated to the Board to set premium rates, and to see that all companies writing insurance in Texas are solvent.

As may be observed, the heart of appellant's case is that the State Board of Insurance did not have the authority to promulgate the rules in question.

The rules under attack were promulgated by the Board purported to be founded upon those provisions of the Insurance Code prohibiting rebating and discrimination, and such rules make the charging of a lesser rate of interest than 6% an extension of credit as an inducement to insure with a particular company or agent.

There are various rebating and discrimination provisions throughout the Insurance Code.

Article 5.08 makes it unlawful to grant special favors and inducements, and that any violation shall constitute unjust discrimination; Article 5.09 makes the making of any distinction or discrimination in favor of insureds having a like hazard; Art. 5.20 prohibits rebates; 5.41 prohibits inducements; Article 5.42 concerns collection of premiums, and 21.14, Sec. 22, governs rebates and inducements by the activities of agents.

The evidence in this case dealt primarily with lines other than life insurance.

The two systems of time payment for insurance are fairly uniform among all companies. Three and five year policies were sold for a premium note in the amount of the premium, with interest, executed by the insured and payable in two or three annual installments, one year and shorter time policies were carried as an account receivable in the amount of the premium and payable monthly and were mostly automobile. The longer term policies were fire, allied lines, homeowners, etc.

As concerns fire and allied lines and those covered by Arts. 5.52 and 5.53, appellant contends that the language of Art. 5.42 does not confer upon the Board authority to promulgate the rules.

Appellant cites an opinion No. S-179 dated October 20, 1955 by the Attorney General, holding that the Board had no authority to regulate the rate of interest charged on deferred premium payment, because the interest was not a part of the policy premium.

In Opinion No. C-167, October 25, 1963, the Attorney General affirmed the former opinion and held that the Board did not have the authority to promulgate such rules.

In Opinion No. C-253, May 4, 1964, in which the former opinions, as well as Article 5.42 were not referred to, the Attorney General stated that the Board could adopt reasonable rules and regulations to prevent use of extension of credit as an inducement to insure with a particular company.

■ We do not believe that the Board has the legal authority to promulgate the rules regulating the minimum interest that may be charged on deferred premiums notes. Amarillo National Life Insurance Company v. Brown, Tex.Civ.App., 166 S.W. 658, er. ref; MacDonald v. Calkins, 31 Ariz. 161, 251 P. 458.

The rule of statutory construction of *ejusdem generis* is discussed in Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269, 153 A.L.R. 1054.

In Commercial Standard Insurance Co. v. Board of Insurance Commissioners, Tex.Civ.App., 34 S.W.2d 343, er. ref., the Court held that the Board had power to fix premium rates, but did not have the statutory authority to fix and regulate a single operating exercise.

The interest or service charge on premium financing is a part of the total cost of insurance as distinguished from the premium itself. The rules have the effect of abrogating Articles 7426 and 7429, V.A.C.S., which make certain combinations unlawful which have the effect "To fix * * * increase, or reduce * * * the cost of insurance * * *."

Since we do not believe the Board had the statutory authority to promulgate the rules, the Court erred in making Conclusion of Law No. 2, because it is contrary to the Insurance Code.

The Conclusions of Law are as follows:

"1. Plaintiff is a proper party with a litigable interest in the subject matter of this suit.

2. The premium note plan does not constitute an extension of credit and is subject to regulation by the State Board of Insurance as to interest rates because it is connected with the existence of the policy and the insurer has the right to cancel the policy in the event of default as to the deferred payment.

3. State Board of. Insurance Board Orders Nos. 6261, 6332, 6432, and 6485 were validly issued and promulgated by said Board, acting within the scope of its authority as set forth in the Constitution of Texas, the Insurance Code, and the statutes of Texas, and said Board Orders are valid orders.

4. State Board of Insurance Board Orders Nos. 6261, 6332, 6432, and 6485 are reasonably suported by substantial evidence and are not arbitrary, capricious, or unreasonable."

Additional Conclusions of Law are:

"1. The charging of different rates of interest and/or service charges to different insureds under deferred premium payment plans (if the same be legally extension of credit) is not a bona fide extension of credit as contemplated by Chapter 5 of the Texas Insurance Code, 1951, as amended.

2. The State Board of Insurance may validly promulgate uniform rates of interest and/or service charges to be charged and collected on deferred premium payment plans under the authority of the Constitution of the State of Texas, the Insurance Code of Texas, 1951, as amended, and the Statutes of the State of Texas."

We do not believe that the findings of fact are reasonably supported by the evidence.

There were a number of witnesses called by the Board who testified as to the practice for insureds to have different service charges for insureds of the same class, and an exception to the rule of interest charges, the size of the premium involved would be considered, competition for business, whether another company was reducing interest rates to keep business and as a selling tool.

Appellant's testimony was that the company charged one rate of interest on policies of more than one year and a service charge on annual policies, and that it had not lost business because of the promulgated rule.

The testimony was lengthy but since we do not believe the Board had the statutory authority to promulgate the rules we do not think it necessary to review such in more detail.

It is noted that in Art. 5.25 of the Code, the Board is given the exclusive power and authority to prescribe—rates of premiums and to amend such rates of premiums.

Art. 5.42 is as follows:

"Art. 5.42.  Not Retroactive

The provisions of this subchapter shall not deal with the collection of premiums, but each company shall be permitted to make such rules and regulations as it may deem just between the company, its agents, and its policyholders; and no bona fide extension of credit shall be construed as a discrimination, or in violation of the provisions of this subchapter."

The judgment of the trial court is reversed and judgment here rendered for appellant.

Reversed and rendered.

HUGHES, Justice (concurring).

I adopt as a part of this opinion the following portion of an opinion prepared for the present Attorney General of Texas by Assistant Attorney General Dudley D. McCalla October 25, 1963:

"On October 22, 1955, the then Attorney General issued Opinion No. S–179, summarized as follows:

'The Board of Insurance Commissioners of the State of Texas does not have the authority to regulate the rate of interest charged on deferred premiums.'

Opinion No. S–179 is based upon those portions of Articles 5.25 and 5.42, Texas Insurance Code, quoted as follows:

'Art. 5.25.  Board Shall Fix Rates

The Board of Insurance Commissioners shall have the sole and exclusive power and authority and it shall be its duty to prescribe, fix, determine and promulgate the rates of premiums to be charged and collected by fire insurance companies transacting business in this State.  Said Board shall also have authority to alter or amend any and all such rates of premiums so fixed and determined and adopted by it, and to raise or lower the same, or any part thereof, as herein provided.

'Art. 5.42.  Not Retroactive

The provisions of this subchapter shall not deal with the collection of premiums, but each company shall be permitted to make such rules and regulations as it may deem just between the company, its agents, and its policyholders; and no bona fide extension of credit shall be construed as a discrimination, or in violation of the provisions of this subchapter.'

This opinion concludes by holding that the Board 'does not have the authority to regulate the rate of interest charged by companies on deferred premiums, as the amount of interest charged is not a part of the policy premium determined by the Board, but constitutes a charge separate and apart from the policy premium. * * *'

We are not directed to any statute purporting to give the State Board of Insurance Authority to regulate the rate of interest to be charged on deferred premiums on fire insurance.  On the contrary, Articles 5.25 and 5.26, Texas Insurance Code, give the Board authority to regulate premium rates, while Article 5.42 constitutes express legislative permission for the deferment of premium payments and the adoption of regulations by each insurance company concerning the collection of such premiums.

In the case of Commercial Standard Insurance Company v. Board of Insurance Commissioners, 34 S.W.2d 343 (Civ.App. 1930, error ref.), the issue before the

Court was whether or not the Board had authority to promulgate an order fixing the amount of commissions which fire insurance companies might pay to their local agents. The Court noted the statutes controlling the regulation of fire insurance (now subchapter C of Chapter 5 of the Insurance Code) and stated that:

'The statutes vest in said Board very extensive and exclusive powers over premium rates and provide for securing information on which to fix, alter, amend, or modify same.'

This is still true of these statutes. In the course of its opinion denying the Board's authority to fix the amount of commission, the Court went on to hold as follows:

'In all instances, however, such powers relate to fixing maximum premium rates; and nowhere is any express authority given by law to regulate or control any of the items, elements, or charges, entering into or going to make up the aggregate premium rate. * * these statutes, having undertaken in considerable detail to prescribe the powers and duties of the Board relative to such maximum rate only, without giving authority to them to fix or regulate the different elements of expense entering into that rate, must be construed as a legislative denial of such power.'

The Court further held:

'The Board can exercise only the authority conferred upon it by law "in clear and unmistakable terms, and will not be deemed to be given by implication, nor can it be extended by inference, but must be strictly construed." 51 C.J. 56; State v. Robinson (Tex. Sup.), [119 Tex. 302] 30 S.W.2d 297.'

Had the Legislature desired to confer authority upon the Board to regulate or specify interest rates charged upon deferred premiums, it easily could have been done so. Instead, Article 5.42 has not been amended since the release of Opinion No. S–179, some eight years ago.

In view of the foregoing authorities and in the absence of any language of the Insurance Code purporting to give the Board authority to regulate rates of interest upon deferred premiums, we affirm the holding of Opinion No. S–179 and respectfully advise you that the State Board of Insurance does not have the authority to promulgate the order set out in your opinion request."

The Board in its brief herein makes this argument:

"A 'bona fide extension of credit' is not discrimination under Article 5.42. The overwhelming weight of the evidence before the Trial Court shows that the credit rating or standing of the insured was not a factor considered by companies or agents in reducing interest rates on deferred premiums. Time after time witnesses presented by the Board testified that the only factors considered were the competition for the business, the size of the premium or risk, and the value of the agency making the request for a reduced interest rate. With one exception, the credit standing of the insured was never mentioned as a factor which was considered in determining whether to reduce the rate of interest charged on deferred premiums except with regard to open accounts which are not covered by the questioned rules. There can be no 'bona fide extension of credit' when the credit standing of the person receiving such credit is not considered by any of the parties to the contract."

The fallacy in this argument, as I see it, is that conceding the Board has authority to pass regulations requiring appraisement of the credit standing of the policyholder to give assurance that the extension of credit is bona fide, the rule of the Board, in question here, does not contain any such regulation or requirement. All that this rule does is to provide that the rate of interest on premium loans must be as much

as 6% per annum. I am at a loss to understand how this provision can be said to regulate the bona fides of the loan. For the life of me, I cannot think of any reason for holding that all premium loans bearing 6% interest or more are bona fide extensions of credit and all premium loans bearing interest at the rate of less than 6% are mala fide extensions of credit.

Art. 5.42 of the Texas Insurance Code, copied above, is specifically applicable only to fire and allied lines of insurance and is not so applicable to automobile and casualty lines of insurance. For this reason, the Board contends that the rule in question, in any event, is applicable to the latter class of insurance.

Although our holding that the rule is invalid as to all classes of insurance is not so well fortified without the help of Art. 5.42, I find lack of statutory authority of the Board to enact this rule without consideration of Art. 5.42.

I concur in the opinion of the majority.