

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 8, 1958

Hon. S. Perry Brown
Chairman and Executive Director
Texas Employment Commission
Brown Building
Austin, Texas

Opinion No. WW-485

Re: Whether the Texas
Employment Commission
can enter into a valid
agreement with the
Federal Government to
pay extended benefits
under the (Federal)
Temporary Unemployment
Compensation Act of
1958 without Legislative
authorization.

Dear Mr. Brown:

You have requested the opinion of this office on the follow-
ing questions concerning the (Federal) Temporary Unemployment
Compensation Act of 1958:

> 1.  Can the Texas Employment Commission
> enter into a valid agreement with the
> Federal Government to pay benefits under
> this Act without legislative authorization?
>
> 2.  Can the Texas Employment Commission
> pay benefits for a number of weeks in
> excess of the maximum number of weeks
> specified in the Texas Unemployment
> Compensation Act?

The purpose of the (Federal) Temporary Unemployment
Compensation Act of 1958 is to provide temporary additional
unemployment compensation to individuals who have exhausted
their rights under the unemployment compensation laws of the
State and the Federal Government.

The 1958 Act is applicable only in those states that have entered
into an Agreement to administer the Act. The funds are furnished
by the Federal Government and there is no obligation on the State
to repay the funds. However, the funds are not an outright grant.

The Federal Government merely finances the program, and unless the amounts expended have been restored by the States to the United States Treasury by January 1, 1963, the Federal unemployment tax credit allowed employers in the State will be reduced as provided in Section 104 of the Act.

The 1958 Act provides, in part, as follows:

"Sec. 101 (a) (1) Payment of temporary unemployment compensation under this Act shall be made, for any week of unemployment which begins on or after the fifteenth day after the date of the enactment of this Act and before April 1, 1959, to individuals who have, after June 30, 1957 (or after such later date as may be specified pursuant to section 102 (b) ), exhausted (within the meaning prescribed by the Secretary by regulations) all rights under the unemployment compensation laws referred to in paragraph (3) and who have no rights to unemployment compensation with respect to such week under any such law or under any other Federal or State unemployment compensation law.

"(2) Except as provided in Section 103, payment of temporary unemployment compensation under this Act shall be made only pursuant to an agreement entered into under section 102 and only for weeks of unemployment beginning after the date on which the agreement is entered into.

"(3) The unemployment compensation laws referred to in this paragraph are:

"(A) Any unemployment compensation law of a State.

"(B) Title XV of the Social Security Act, as amended (42 U.S.C. 1361 et seq.).

"(C) Title IV of the Veterans'

Readjustment Assistance Act of
1952, as amended (38 U.S.C. 991
et seq.).

" . . .

"Sec. 102. (a) The Secretary (of Labor) is
authorized on behalf of the United States to
enter into an agreement with a State, or with
the agency administering the unemployment
compensation law of such State, under which
such State agency -

"(1)  will make, as agent of the
United States, payments of temporary
unemployment compensation to the
individuals referred to in section
101 on the basis provided in this
Act; and

"(2)  will otherwise cooperate with
the Secretary and with other State
agencies in making payments of temporary
unemployment compensation under this Act.

"(b)  If the State so requests, the agree-
ment entered into under this section shall
specify, in lieu of June 30, 1957, such
later date as the State may request.  In
any such case, an exhaustion under the
unemployment compensation law of such
State shall not be taken into account for
the purposes of this Act unless it occurred
after such later date.

" . . .

"Sec. 104 (a)  The total credits allowed
under section 3302 (c) of the Federal Un-
employment Tax Act (26 U.S.C. 3302 (c) ) to
taxpayers with respect to wages attributable
to a State for the taxable year beginning on
January 1, 1963, and for each taxable year
thereafter, shall be reduced in the same

>manner as that provided by section 3302 (c)
>(2) of the Federal Unemployment Tax Act for
>the repayment of advances made under title
>XII of the Social Security Act, as amended
>(42 U.S.C. 1321 et seq.), unless or until
>the Secretary of the Treasury finds that by
>December 1 of the taxable year there have
>been restored to the Treasury the amounts
>of temporary unemployment compensation paid
>in the State under this Act (except amounts
>paid to individuals who exhausted their un-
>employment compensation under title XV of the
>Social Security Act and title IV of the Vet-
>erans' Readjustment Assistance Act of 1952
>prior to their making their first claims
>under this Act), the amount of costs in-
>curred in the administration of this Act
>with respect to the State, and the amount
>estimated by the Secretary of Labor as
>the State's proportionate share of other
>costs incurred in the administration of
>this Act."

The first question to be determined is whether the Texas Employment Commission can enter into the Agreement required by Section 102 of the 1958 Act.

The Federal Government is presently engaged in two programs in this State under contracts with the Texas Employment Commission. These programs are the Title XV of the Social Security Act program and the Title IV of the Veterans' Readjustment Assistance Act of 1952 program. The funds disbursed by the Texas Employment Commission under each of these two programs are outright grants of Federal money and no repayment of such funds is involved. The Texas Employment Commission is merely acting as the disbursing agency for the Federal Government. Therefore, neither of these two programs is comparable to the program required by the 1958 Act.

The Texas Unemployment Compensation Act is codified as Article 5221b V.C.S. Article 5221b-5(a) provides that:

>"Contributions shall accrue and become
>payable by each employer for each calendar
>year, or portion thereof, in which he is

> subject to this Act, with respect to wages
> for employment paid during such calendar
> year, or portion thereof."

The Texas Act further states that the contribution rate for each employer shall be in accordance with the contribution rate table set forth in said Act. Article 5221b-5(c) (6) provides that:

> ". . .no employer shall be required to
> pay contributions at a rate greater than
> two and seven-tenths per cent (2.7%) nor
> permitted to pay contributions at a rate
> less than one-tenth of one per cent (1/10
> of 1%)."

Article 5221b-1(d) provides that:

> ". . .The maximum total amount of benefits
> payable to any eligible individual during
> any benefit year shall not exceed whichever
> is the lesser of:
>
> (1)  Twenty-four (24) times his benefit
>      amount, or
>
> (2)  One-fourth ($\frac{1}{4}$) of such wage credits."

Article 5221b-16 provides that:

> "Benefits shall be deemed to be due and
> payable under this Act only to the extent
> provided in this Act and to the extent that
> moneys are available therefor to the credit
> of the Unemployment Compensation Fund, and
> neither the State nor the Commission shall
> be liable for any amount in excess of such
> sums."

Article 5221b-9, sets forth the administrative duties and powers of the Texas Employment Commission and provides for State - Federal cooperation in the furnishing of information and reports and in the administration of the Act.

Article 5221b-15a pertains to "Reciprocal arrangements". Section (a) of this Article, provides for reciprocal arrangements regarding individuals working for a single employing unit in several states.

Section (b) provides that:

"(b)  The Commission is also authorized to enter into arrangements with the appropriate agencies of other States or of the Federal Government whereby potential rights to benefits accumulated under the unemployment compensation laws of one or more States or under one or more such laws of the Federal Government, or both, may constitute the basis for the payment of benefits through a single appropriate agency under terms which the Commission finds will be fair and reasonable as to all affected interests and will not result in any substantial loss to the fund."

This Section of the Texas Act is commonly called the "Combined Wage Agreement Section" by the Texas Employment Commission. The Section means that employees who have potential rights to benefits under the unemployment compensation laws of one or more states or under one or more such laws of the Federal Government, or both, but not having enough benefit rights in any one particular State or under the Federal Government to qualify for benefit payments, may combine such benefit rights and thereby qualify for benefit payments through one single agency.  Usually the payments are made by the agency in the state where the largest benefit credits were accumulated.  We are informed by the Insurance Division (formerly the Benefit Division) of the Texas Employment Commission that the Texas Employment Commission processes an average of 125 such reciprocal claims a month.  Whereas about 7,000 initial ordinary benefit claims are currently being processed each week by the Texas Employment Commission.

Section (c) provides for reimbursements to the agency making the benefit payments under the above Section (b).

Section (d) authorizes the Commission to enter into reciprocal arrangements regarding individuals performing services on vessels engaged in interstate or foreign commerce.

It is a well settled rule of law that statutory bodies have only such authority as is expressly given to them by law. The Texas Employment Commission being a creature of the statutes can exercise only such authority as is conferred upon it by law in clear and express language.

In Corzelius v. Railroad Commission, et al. 182 SW 2d 412 (rehearing denied), (Tex. Civ. App.), the Court said:

> ". . .The general rule is well settled that boards or commissions which are creatures of the statutes, can exercise only such authority as is conferred upon them by law in clear and express language and that authority will not be construed as being conferred by implication. The latest pronouncement of this rule of construction appears in Board of Ins. Com'rs. v. Guardian Life Ins. Co., 180 SW 2d 906. See also Humble Oil & Refining Co. v. Railroad Comm., 133 Tex. 330, 128 SW 2d 9; Ortiz Oil Co. v. Railroad Comm., Tex. Civ. App., 62 SW 2d 376; Commercial Standard Ins. Co. v. Board of Ins. Com'rs., Tex. Civ. App., 34 SW 2d 343, writ refused. It is equally well settled, however, that when a statute imposes a mandatory duty upon a governmental agency to carry out the express and specifically defined purposes and objectives stated in the law, such statute carries with it by necessary implication the authority to do whatever is reasonably necessary to effectuate the legislative mandate and purpose."

In State, et al. v. Kenyon, Inc. 153 SW 2d 195, (Tex. Civ. App. 1941, error ref.), the Court held that the Texas Employment Commission could not, under its rule making power, enact a rule counting officers of a corporation employees in determining whether the corporation is subject to the Texas Unemployment Compensation Act, irrespective of whether such officers receive remuneration. The Court used the following language:

> "The Act does not authorize the Commission to make any rule or regulation inconsistent with it, but, to the contrary, only authorizes the Commission to administer the Act and to

make rules and regulations necessary and
suitable to that end.  It requires no cita-
tion of authorities to sustain the proposi-
tion that under constitutional law the
legislature cannot delegate authority to
the Commission to make rules or regulations
inconsistent with the Act."

There is no provision in the Texas Unemployment Compensa-
tion Act, either express or implied, which would authorize the
Commission to enter into a valid agreement with the Federal
Government to pay benefits under the (Federal) Temporary Unemploy-
ment Compensation Act of 1958.  Therefore, it is our opinion
that the Texas Employment Commission cannot enter into a valid
agreement with the Federal Government to pay benefits under the
Temporary Unemployment Compensation Act of 1958 without legisla-
tive authorization.

The answer to your second question necessitates an examina-
tion of Article 5221b-1(d) of the Texas Act, hereinabove set
forth.  This Article sets out the maximum total amount of benefits
payable to any eligible individual during any benefit year.  We
are of the opinion that this provision pertains only to benefit
payments made under the Texas Act.  Therefore, it is our opinion
that the Texas Employment Commission cannot pay benefits under the
Texas Unemployment Compensation Act in excess of the maximum total
amount of benefits payable under the Act.

## SUMMARY

The Texas Employment Commission is created
by statute and can exercise only such
authority as is conferred upon it by law.
The Commission cannot enter into an agree-
ment with the Federal Government to pay
extended benefits under the (Federal) Tem-
porary Unemployment Compensation Act of
1958 without legislative authorization.
The Texas Employment Commission cannot pay
benefits under the Texas Unemployment
Compensation Act in excess of the maximum

total amount of benefits payable under the Act.

Very truly yours,

WILL WILSON
Attorney General of Texas

By F. C. Jack Goodman

F. C. Jack Goodman
Assistant

FCJG:jc

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

J. C. Davis

Jack Price

Ray Loftin

John Reeves

REVIEWED FOR THE ATTORNEY GENERAL

BY:   W. V. Geppert